UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY ALICE CLARK, CHRISTOPHER COULTER, AARON PEREZ and KEVIN NELSON, on behalf of themselves, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL VISION SERVICES, LLC d/b/a MyEyeDr,<br><br>Defendant. | Case No. 22-cv-10236-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                        **July 22, 2022**

## I.  Introduction

Named Plaintiffs Mary Alice Clark, Christopher Coulter, Aaron Perez and Kevin Nelson, along with seventeen opt-in Plaintiffs who have joined this action to date, (collectively, "Plaintiffs") bring this putative collective action against Defendant Capital Vision Services, LLC d/b/a MyEyeDr ("MyEyeDr") alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), Massachusetts wage laws, Mass. Gen. L. c. 151, §§ 1A and 1B, and the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Stat. § 333.101 *et seq.*  D. 12; see D. 20 at 7. Plaintiffs have moved to certify a collective action conditionally on behalf of themselves and other similarly situated persons under 29 U.S.C. § 216(b).  D. 20.  For the reasons stated below, the Court ALLOWS the motion.

1

## II. Legal Standard

"The FLSA allows employees to band together to enforce their rights by initiating or joining a collective action." Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 160 (D. Mass. 2019) (citing Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 181 (D. Mass. 2016); 29 U.S.C. § 216(b)). "Unlike a class action under Federal Rule of Civil Procedure 23, collective actions under the FLSA 'require similarly situated employees to affirmatively opt-in and be bound by any judgment.'" Id. 160–61 (quoting Cunha, 221 F. Supp. 3d at 181). "[C]ourts have developed a certification process for plaintiffs seeking to bring FLSA collective actions." Id. at 161 (citing Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (further citations omitted)). Although the First Circuit has not addressed this issue, "most courts—including most district courts in this circuit—follow a two-step approach." Id. (quoting Cunha, 221 F. Supp. 3d at 160).[1]

"First, 'the court makes an initial determination of whether the potential class should receive notice of the pending action.'" Id. (quoting Trezvant v. Fidelity Emp'r Servs. Corp., 434 F. Supp. 2d 40, 42 (D. Mass. 2006)). "[T]his determination is made using a fairly lenient standard,

---

[1] MyEyeDr takes issue with applying this two-step approach, relying in large part upon the Fifth Circuit's decision in Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021). Swales, however, does not represent the prevailing standard in this circuit and in others. See Modeski v. Summit Retail Sols., Inc., No. 18-cv-12383-FDS, 2019 WL 10890339, at *7 (D. Mass. Apr. 16, 2019). Although defense counsel stated at oral argument that Modeski and other cases in this district have suggested otherwise, that does not appear to be accurate. See, e.g., Modeski, 2019 WL 10890339, at *7–8 (granting conditional certification under two-step approach); Bah v. Enter. Rent-A-Car Co. of Boston, LLC, 560 F. Supp. 3d 366, 372 (D. Mass. 2021). Bah, for example, denied the defendant's request for deferral of conditional certification pending limited discovery, relying upon the two-step approach. Bah, 560 F. Supp. 3d at 372. Bah recognized Swales's rejection of that approach but, to the extent the defendants sought discovery regarding "the issues of willfulness and of [the named plaintiff's] individual claims," determined that such issues were so "closely intertwined with the merits of the possible class action" as to be "better addressed at the second stage of the certification process." Id. at 372–73 (stating that "[n]either of these issues warrant departure from the two-step approach followed by the majority of courts").

2

which typically results in conditional certification." Id. (quoting Trezvant, 434 F. Supp. 2d at 43). "The plaintiff must show only 'that there is "some factual support"—as opposed to mere allegations—that the potential plaintiffs are similarly situated.'" Id. (quoting Cunha, 221 F. Supp. 3d at 182). "Courts have held that plaintiffs can meet this burden by making a modest factual showing or asserting substantial allegations that 'the putative class members were together the victims of a single decision, policy, or plan that violated the law.'" Trezvant, 434 F. Supp. 2d at 43 (emphasis and footnote omitted) (quoting Thiessen v. Gen. Elec. Capital, 267 F.3d 1095, 1102 (10th Cir. 2001)).

"Second, 'after discovery is complete, the court makes a final "similarly situated" determination.'" Romero, 368 F. Supp. 3d at 161 (quoting Trezvant, 434 F. Supp. 2d at 42). "Pertinent factors at this stage include: (1) any disparate factual and employment settings—for example, whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." Id. (citing Trezvant, 434 F. Supp. 2d at 45).

### III. Factual Background

The Court draws the following factual allegations from the amended complaint, D. 12, Plaintiffs' motion and the declarations submitted therewith, D. 20; see D. 21, MyEyeDr's opposition and the declarations submitted therewith, see D. 30, and accompanying documents. See Dyse v. HealthAll Consulting, 433 F. Supp. 3d 35, 38 (D. Mass. 2020) (stating that "[o]n a motion for conditional certification, the court may consider 'the pleadings and any affidavits which have been submitted'" (quoting Trezvant, 434 F. Supp. 2d at 43)).

MyEyeDr owns and operates over 500 optical stores across the United States. D. 12 ¶ 29. Plaintiffs formerly worked as General Managers ("GMs") at forty-nine MyEyeDr locations across nine states. See D. 12 at 1; D. 20 at 9; D. 21 ¶ 1; D. 30 at 3 n.2. Seven of Plaintiffs also worked as General Managers in Training ("GMITs") across five states. See D. 21 ¶ 1; D. 20 at 9–10 (citing declarations of alleged former GMITs).

Plaintiffs who worked as GMITs declare that their primary duty was to learn how MyEyeDr stores operated by working in stores with a GM. D. 21-4 ¶ 11; D. 21-6 ¶ 12; D. 21-7 ¶ 10; D. 21-10 ¶ 9; D. 21-11 ¶ 9; D. 21-15 ¶ 12; D. 21-19 ¶ 12. Plaintiffs' primary duty as GMITs did not involve management of other employees. D. 12 ¶ 45; see, e.g., D. 21-4 ¶ 15; D. 21-6 ¶ 16; D. 21-7 ¶ 14; see also D. 20 at 10 (citing further declarations).

As GMs, Plaintiffs declare that their primary duties consisted of the same customer service duties performed by non-exempt employees, including checking in customers for appointments, answering phones, scheduling appointments, verifying and processing insurance, selling eyewear, setting up displays and cleaning the store. D. 12 ¶ 50; see, e.g., D. 21-4 ¶ 12; D. 21-5 ¶ 11; D. 21-6 ¶ 13; D. 21-7 ¶ 11; see also D. 20 at 10–11 (citing further declarations). Plaintiffs also state that their primary duties as GMs did not involve managing other employees. D. 12 ¶ 45; see, e.g., D. 21-4 ¶¶ 13–15; D. 21-5 ¶¶ 12–14; D. 21-6 ¶¶ 14–16; D. 21-7 ¶¶ 12–14; see also D. 20 at 11 (citing further declarations). MyEyeDr uses uniform job postings to recruit GMs for stores nationwide that do not vary based upon geographical location or store size. See, e.g., D. 21-24 (collecting job postings).

During the relevant period, MyEyeDr uniformly classified all GMITs and GMs as exempt, paid all GMITs and GMs a purported salary, and did not pay GMITs and GMs overtime compensation for working more than forty hours per week. D. 12 ¶¶ 1, 42; see D. 13 ¶ 42

(admitting "that Defendant classified GMITs and GMs as exempt from the overtime provisions of the FLSA and applicable state law during the relevant time period, and paid them on a salary basis," but otherwise denying allegations).

## IV.     Procedural History

Plaintiffs commenced this action on February 11, 2022, D. 1, and later filed an amended complaint, D. 12.  Plaintiffs have moved to certify a collective action conditionally pursuant to 29 U.S.C. § 216(b). D. 20.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 40.

## V.     Discussion

### A.     **Conditional Certification**

#### 1.     *The Court grants Plaintiffs' request for conditional certification*

Plaintiffs request that the Court conditionally certify the following collectives:

All current and former employees with the title General Manager ("GMs") employed by Capital Vision Services, LLC d/b/a MyEyeDr ("MyEyeDr" or "Defendant") at any of Defendant's retail locations in the United States at any time on or after February 11, 2019 ("Putative FLSA GM Collective"), and

All current and former GMs who were hired from outside of MyEyeDr, and spent a week or more in-store training (hereafter referred to as "General Managers In Training" or "GMITs"), employed by MyEyeDr at any of MyEyeDr's retail locations in the United States at any time on or after February 11, 2019 ("Putative FLSA GMIT Collective").

D. 20 at 7.

In support of this request, Plaintiffs submitted declarations of twenty Named and opt-in Plaintiffs who worked as GMs in over forty-nine retail locations across nine states, seven of whom also worked as GMITs across five states.  See D. 21.  As noted above, these declarations state that MyEyeDr uniformly classified all GMITs and GMs as exempt, paid all GMITs and GMs a purported salary, and did not pay GMITs and GMs overtime compensation for working more than

5

forty hours per week—despite allegations that Plaintiffs' primary duties consisted of "non-exempt work" such as training or "customer service, clerical, and related non-exempt duties" and did not include management of other employees. See D. 20 at 9–12 (citing declarations). Such assertions satisfy the "'modest factual showing' required at step one of the FLSA certification procedure." See Romero, 368 F. Supp. 3d at 162 (quoting Trezvant, 434 F. Supp. 2d at 43).

### 2. *MyEyeDr's arguments against conditional certification are unavailing*

MyEyeDr argues that an alleged blanket misclassification of employees with certain job titles is insufficient as a matter of law to establish a common unlawful policy to support that such employees were "similarly situated." D. 30 at 11–12. For support, MyEyeDr cites decisions stating that evidence of uniform misclassification does not render employees "similarly situated" under the FLSA. See id. (citing cases). It does not, however, appear that this necessarily represents the view within this circuit. See, e.g., Gardner v. Fallon Health & Life Ins. Co., Inc., No. 4:19-cv-40148-TSH, 2021 WL 4459525, at *3 (D. Mass. Sept. 29, 2021) (finding defendants' alleged policy of treating a discrete class of employees as exempt from FLSA overtime requirements sufficient for "similarly situated" determination); Kane, 138 F. Supp. 2d at 215 (same).

Even assuming that uniform misclassification of a discrete class were insufficient to satisfy the showing that the purported class is "similarly situated," Plaintiffs have made a greater showing here regarding same, specifically by demonstrating similarity in Plaintiffs' duties, responsibilities and experiences as GMs. For example, as noted above, Plaintiffs' twenty declarations assert that their primary duties consisted of customer service duties including checking in customers for appointments, answering phones, scheduling appointments, verifying and processing insurance, selling eyewear, setting up displays and cleaning the store. See, e.g., D. 21-4 ¶ 12; D. 21-5 ¶ 11; D. 21-6 ¶ 13; D. 21-7 ¶ 11; see also D. 20 at 10–11 (citing further declarations). Plaintiffs, further,

state that their primary duties as GMs did not involve managing other employees.  See, e.g., D. 21-4 ¶¶ 13–15; D. 21-5 ¶¶ 12–14; D. 21-6 ¶¶ 14–16; D. 21-7 ¶¶ 12–14; see also D. 20 at 11 (citing further declarations).  Moreover, MyEyeDr's uniform job posting for GMs lists the same job responsibilities for all store locations nationwide.  See D. 21-24; see also Adams v. Wenco Ashland, Inc., No. 1:19CV1544, 2020 WL 2615514, at *6 (N.D. Ohio May 22, 2020) (accepting plaintiff's submission of "job postings to show general uniformity in the [assistant general manager] position across [defendant's] locations and, consequently, to show that [p]laintiff and other [assistant general managers] are similarly situated for conditional certification purposes," since "the issue at [the conditional certification] stage is whether [p]laintiff has shown that his position is similar to other putative class members").  Plaintiffs' showing meets the low standard to provide "some factual support" that the proposed collectives are similarly situated.  See Romero, 368 F. Supp. 3d at 161.

While MyEyeDr admits in its answer that GMs "had the same overall primary duty," D. 13 ¶ 53, MyEyeDr contends that variety in GMs' specific duties, responsibilities and experiences prevents conditional certification.  D. 30 at 14–15; see D. 30-1 to D. 30-7.  Such argument fails, as "courts routinely grant certification where the proposed class members' job titles or duties are not exactly the same, as long as they are similar."  Drake v. Tufts Associated Health Maint. Org., Inc., No. 19-cv-11876-FDS, 2021 WL 2767308, at *5 (D. Mass. Feb. 12, 2021) (quoting Lichy v. Centerline Commc'ns LLC, No. 15-cv-13339-ADB, 2018 WL 1524534, at *3 (D. Mass. Mar. 28, 2018)) (citing Klapatch v. BHI Energy I Power Servs., LLC, No. 18-cv-11581-RGS, 2019 WL 859044, at *2 (D. Mass. Feb. 22, 2019); Trezvant, 434 F. Supp. 2d at 48).  Here, Plaintiffs have made, at minimum, a "modest factual showing" that GMs perform similar duties.  See Trezvant, 434 F. Supp. 2d at 43.  To the extent MyEyeDr asks the Court to make findings of fact with respect

7

to contradictory evidence, see D. 30 at 14–15, such determination would address the action's merits and be inappropriate at this stage. "[C]ourts generally do not consider merits questions when deciding whether to conditionally certify an FLSA collective action group." See Romero, 368 F. Supp. 3d at 162 (citing Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d 411, 420 (D. Mass. 2018); Lichy, 2018 WL 1524534, at *4 (collecting cases)) (stating that "factual dispute[s] . . . will either be reconciled in the course of discovery or decided by the ultimate fact finder"); Roberts v. TJX Companies, Inc., No. 13-cv-13142-ADB, 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017) (noting that, at the conditional certification stage, "courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented" (citations omitted)). Moreover, to the extent MyEyeDr challenges Plaintiffs' declarations as containing similar allegations, see D. 30 at 14 (referring to Plaintiffs' declarations as "cookie-cutter"), "[c]ourts regularly allow conditional certification based on similar factual materials." Dyse, 433 F. Supp. 3d at 39 (collecting cases).

      MyEyeDr also argues that conditional certification should be denied because the Court will need to make individualized determinations as to whether and which FLSA exemptions or exceptions will apply to each Plaintiff. D. 30 at 16–17 (arguing that "[t]he potential application of this array of exemptions and exceptions multiplies the complexity of this litigation and would frustrate the Court's capacity to conclude that any two GMs or GMITs are similarly situated"). As noted above, however, such argument addresses the merits of the action and cannot be considered at this stage. See Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 69–70 (D. Mass. 2018) (concluding that "[d]efendant's contention concerning defenses, including whether

exemptions from overtime apply, 'tread too deeply into the merits and are premature without knowing who the actual class members will be'" (quoting Roberts, 2017 WL 1217114, at *6)).

3. *The Court rejects MyEyeDr's proposed limitations upon the collectives*

MyEyeDr also argues that, even if the Court allows Plaintiffs' conditional certification motion, it should limit who may join the collectives. D. 30 at 18. First, MyEyeDr asserts that "the collectives should not include any employees who never worked more than [forty] hours during the relevant period." Id. As MyEyeDr's own declarants confirm, however, MyEyeDr does not track the hours worked by GMs. See, e.g., D. 30-2 ¶ 18 (stating that "I do not track my hours because I am not required to do so as an exempt salaried employee"); D. 30-5 ¶ 17 (stating that "I do not track my time, but I update by schedule in Dayforce to reflect when I am working on a given day"). Thus, as argued by Plaintiffs, D. 35 at 5–6, there is no reliable way to determine from MyEyeDr's records which GMs worked more than forty hours in a workweek. Accordingly, the Court will not limit the collectives based upon hours worked per week as proposed by MyEyeDr.

Second, MyEyeDr contends that "the relevant period should be defined using the date of the Court's order (if granted), not the date of the Complaint," since "[t]he limitations period for opt-in plaintiffs continues to run until those individuals file their opt-in notice." D. 30 at 18. Thus, according to MyEyeDr, "the Court should at most allow Plaintiffs to send notices to employees who worked within three years of the date of the conditional certification order" or else "individuals with no timely claims may join, only to be immediately dismissed." Id. Courts, however, commonly use the date of the filing of the complaint to calculate the relevant period. See, e.g., Bittencourt v. Ferrara Bakery & Café, Inc., 310 F.R.D. 106, 116–17 (S.D.NY. 2015) (noting that, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint,

with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date" and rejecting defendants' request for the Court to calculate notice period based upon date of court's order (internal quotation marks and citations omitted)); Castillo v. P & R Enters., Inc., 517 F. Supp. 2d 440, 449 (D.D.C. 2007) (reasoning that, "[b]ecause the date on which the notices will be distributed is uncertain," a date "three years prior to the filing of the [c]omplaint" is appropriate).

Accordingly, the Court conditionally certifies the collectives as requested by Plaintiffs, see D. 20 at 7.

### B.  Notice and Consent

In addition to seeking conditional certification, Plaintiffs seek approval of their proposed procedures for notifying the collective, D. 21-1 (proposed notice); D. 21-2 (proposed reminder), and consenting to join the collective action, D. 21-3 (proposed consent to join form). Plaintiffs also request that notice be sent to each potential collective member by first-class mail, email and text message. D. 20 at 23–24. Plaintiffs, further, ask that the Court allow the consent to join form to be signed through a website maintained by Plaintiffs' counsel or a third-party notice administrator. Id. at 24. Finally, Plaintiffs ask that the Court order MyEyeDr to disclose "the names, job titles, employee-identification numbers, dates of employment, last known mailing addresses, last known personal e-mail addresses, last known phone numbers, and work locations for the conditionally certified collective-action members" to Plaintiffs' counsel within ten business days of this Court's Order. Id. at 24–25.

   1. *Content of Notice*

MyEyeDr challenges the content of Plaintiffs' proposed notice. D. 30 at 18–19. "The specific content of the notice is a matter entrusted to the court's discretion." Roy, 353 F. Supp. 3d

at 74 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170–72 (1989)).

First, MyEyeDr contends that the notice should include the following language:

> Individuals who join this action will assume the role of parties to the litigation, which comes with obligations and risks.  If you join the case, you may be asked to provide relevant documents, respond to written questions, and provide testimony under oath at a deposition, which may take place in Boston, Massachusetts.  You may also be required to attend and testify at the trial of this matter in Boston.  In addition, you will be required to preserve and produce evidence including, but not limited to, your social media accounts for the relevant time period, potentially at your own expense.

D. 30 at 19 n.7.  Such language is overbroad, assumes all opt-in plaintiffs will be subject to discovery and that any appearances will be in person and, in the proposed form, may chill participation.  See Prentice v. Fund for Pub. Interest Research, Inc., No. C-06-7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) (stating that "individualized discovery is rarely appropriate in FLSA collective actions" and that "[i]ncluding a warning about possible discovery when that discovery is unlikely will serve no purpose other than deterring potential plaintiffs from joining the suit based on unfounded concerns about the hassle of discovery").  Still, less of a warning and more of a notice about some possibility of discovery would be appropriate to reflect the reality of opt-in Plaintiffs' potential obligations and not deter participation.  Accordingly, the Court will require Plaintiffs to include the following language in the notice:  "If you opt into this suit, there is some possibility that you may be required to provide sworn written answers to questions, documents in support, and/or sworn testimony in person or by remote (videoconferencing) means."

Second, MyEyeDr also proposes to include language about potential claim preclusion of state law claims, citing a recent case from the Supreme Judicial Court.  See D. 30 at 19; Jinks v. Credico (USA) LLC, 488 Mass. 691, 710 (2021) (holding that claim preclusion barred state law

claims "because [plaintiff] could have brought his [s]tate law claims . . . in the [prior FLSA] action"). Plaintiffs reply that MyEyeDr's proposed revision should be rejected as an attempt to deter participation in the collective action. D. 35 at 8. The Court declines to adopt language regarding potential claim preclusion of state law claims. At oral argument, both parties recognized that opt-in Plaintiffs likely will include non-Massachusetts residents. Accordingly, MyEyeDr's proposed language may be incomplete or inaccurate as to non-Massachusetts residents, warranting rejection. See Hoffmann-La Roche, 493 U.S. at 172 (stating that courts should "ensure" that notice is "accurate"); cf. Faught v. Am. Home Shield Corp., No. 2:07-CV-1928-RDP, 2010 WL 10959223, at *6 (N.D. Ala. Apr. 27, 2010), aff'd, 668 F.3d 1233 (11th Cir. 2011) (rejecting request to include information in notice of proposed settlement under Rule 23 about parallel state court proceedings "which only affected [c]lass [m]embers from one state" because such inclusion "would be confusing and turn the [n]otice . . . into an overly complex and technical document"). Such language also could be taken as legal advice. See Smith v. United States, 157 Fed. Cl. 135, 138 (2021) (declining to adopt "proposed language concerning a statute of limitations" because "potential plaintiffs could misinterpret" such language "as legal advice from the [c]ourt concerning whether a potential plaintiff could or should proceed with a claim"). Further, the proposed language risks chilling participation contrary to the FLSA's general purpose of allowing employees to "band together" to enforce their rights, see Romero, 368 F. Supp. 3d 160, and is unnecessary to promote the specific purpose of providing notice, see McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007) (stating that "giving notice to potential plaintiffs of a collective action has less to do with the due process rights of the potential plaintiffs and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's

interest in 'managing collective actions in an orderly fashion'" (quoting Hoffmann-La Roche, 493 U.S. at 173)).

Accordingly, the Court authorizes the content of the notice as proposed by Plaintiffs, D. 21-1, with the addition of the language noted above by the Court regarding potential discovery and trial obligations.

2. *Method of Notice*

MyEyeDr also challenges the method of Plaintiffs' proposed notice. D. 30 at 19–20. First, MyEyeDr argues that the Court should only allow notice by first-class mail and email and reject notice by text message. Id. Many courts, including this session, however, have allowed notice by multiple means, including text message. See, e.g., Pugliese v. Gov't Emps. Ins. Co., No. 21-cv-11629-DJC, 2022 WL 1129341, at *4 (D. Mass. Apr. 15, 2022); Gardner, 2021 WL 4459525, at *4, and cases cited; see also Irvine v. Destination Wild Dunes Mgmt., 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (concluding that distribution of notice via direct mail, email and text message was "reasonable" because society has "become . . . much more mobile . . . with one's email address and cell phone number serving as the most consistent and reliable method of communication").

Second, MyEyeDr argues that the Court should only allow a single notice and reject Plaintiffs' request to send a reminder "approximately half-way through the notice period." See D. 20 at 24; D. 30 at 19–20. Despite MyEyeDr's contention that a reminder notice would be excessive, courts "regularly allow plaintiffs to send a reminder notice." See, e.g., Gardner, 2021 WL 4459525, at *4 (allowing plaintiffs to send one reminder notice and collecting cases authorizing same); Drake, 2021 WL 2767308, at *7 (same).

Accordingly, the Court grants Plaintiffs' proposed method of notice by first-class mail, email and text message and authorizes one reminder notice to be sent by the same methods halfway

through the notice period to those potential opt-in Plaintiffs who have not yet returned signed consent to join forms.  See D. 20 at 23–24; D. 21-1; D. 21-2.

        3.       *Consent to Join Form and Disclosure of Potential Opt-In Plaintiffs*

MyEyeDr does not oppose Plaintiffs' proposed consent to join form, D. 21-3, Plaintiffs' request to allow the consent to join form to be signed through a website maintained by Plaintiffs' counsel or a third-party notice administrator, D. 20 at 24, or Plaintiffs' request for disclosure of information regarding the potential opt-in Plaintiffs within ten business days of this Court's order, id. at 24–25.  See generally D. 30.  Accordingly, the Court grants these requests.

**VI.**    **Conclusion**

For the foregoing reasons, the Court ALLOWS Plaintiffs' motion for conditional certification, D. 20.  Plaintiffs shall amend their proposed notice, D. 21-1, to include the following language:  "If you opt into this suit, there is some possibility that you may be required to provide sworn written answers to questions, documents in support, and/or sworn testimony in person or by remote (videoconferencing) means."  The proposed reminder, D. 21-2, and proposed consent form, D. 21-3, are approved for use as proposed.

    **So Ordered.**

                                            /s/ Denise J. Casper
                                            United States District Judge