# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARY ALICE CLARK, CHRISTOPHER
COULTER, AARON PEREZ and KEVIN
NELSON, on behalf of themselves, and on
behalf of all others similarly situated,

        Plaintiffs,

    v.

CAPITAL VISION SERVICES, LLC d/b/a
MYEYEDR.,

        Defendant.

Civil Action No. 1:22-cv-10236

## DEFENDANT'S OPPOSITION TO MOTION TO QUASH SUBPOENA FOR RECORDS AND DEPOSITION OF SHAVITZ LAW GROUP, AND MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFF LLORENTIS DEPOSITION

Plaintiffs' bid for a protective order (Dkt. 93) is an attempt to obscure misconduct by Plaintiffs' counsel at Shavitz Law Group, P.A. ("SLG")[1] in soliciting employees of Defendant Capital Vision Services, LLC d/b/a MyEyeDr. ("Defendant" or "MyEyeDr.") to initiate and/or join litigation in which those attorneys had no client to represent. Plaintiffs frame Defendant's

---

[1] For simplicity of reference, Defendant refers to Plaintiffs' counsel in this motion as SLG. In fact, the record reflects that at least some of the improper conduct at issue was undertaken by attorneys at Burr & Smith, LLP, co-counsel to Shavitz Law Group in this matter. Further, the attorneys at Burr & Smith participating in this case have joined Shavitz Law Group during the pendency of this litigation. *See* https://shavitzlaw.com/people/loren-b-donnell-2/; https://shavitzlaw.com/people/sam-smith/ (last visited September 25, 2023 (reflecting that Loren Donnell and Sam Smith have joined Shavitz Law Group). Moreover, because the various firms representing Plaintiffs in this matter appear to have acted in concert throughout the litigation, all of them are presumably tainted by misconduct undertaken by any one or more of the Plaintiffs' attorneys. *See Garcia De Leon v. New York Univ.*, 2022 WL 2237452, at *16 (S.D.N.Y. June 22, 2022) (denying motion for class certification and declining to approve class counsel due to counsel's failure to notify court of participation of co-counsel, noting that the "failure to disclose any of this renders both firms unfit to serve as class counsel").

efforts to gather facts related to these solicitations as "outrageous" and a "harassing" "smear campaign." (Motion Dkt. 93 at 6, 12). However, buried in their filings, SLG acknowledges that two of the Plaintiffs lied under oath or otherwise provided materially erroneous testimony about key events related to SLG's solicitation of those individuals. The record evidence also provides good reason to believe SLG improperly contacted at least one individual who became a Plaintiff in this matter by phone to solicit his participation in this litigation in overt violation of Mass. R. Prof. C. 7.3. In addition, the parties' written conferrals on this subject demonstrate SLG's repeated inconsistencies and obfuscations regarding their conduct, which resulted in Defendant taking the admittedly rare step of directing discovery requests to SLG. Those requests are necessary to uncover the full extent and nature of SLG's prohibited solicitations, given Plaintiffs' and SLG's pattern of conduct up to the date of the filing of this Opposition. The information sought is critical to several anticipated motions concerning whether class or collective action is appropriate, and whether SLG can adequately serve as counsel for the putative class and collective they aspire to represent in this litigation. Indeed, given that SLG has been disqualified from other litigation for similar misconduct, the information sought by Defendant's discovery requests implicates SLG's ability to proceed on behalf of any client in this action. The Court should therefore deny the Motion and permit Defendant to compile reasonable information about the extent of SLG's apparent violations of the Rules of Professional Conduct.

## **BACKGROUND**

At the very outset of discovery, during the depositions of Named Plaintiffs, Defendant appropriately sought non-privileged information about which Plaintiff initiated the lawsuit and whether that individual was misled by SLG. Each time Defendant sought, through appropriate conferrals, to clarify and confirm the information provided by SLG, those attorneys provided

incomplete information that contradicted the deposition testimony of SLG's own clients. SLG still has not provided all of the relevant, non-privileged and non-burdensome information sought.

## I.     SLG's Pre-Suit Representations about its Clients

Even before the inception of this action, pre-suit settlement demands from SLG provided grounds for question as to whom they had been retained to represent. Six months before filing this action, SLG sent correspondence to Defendant on August 17, 2021 purporting to represent unidentified "former General Managers" for purposes of pursuing an overtime claim against the company and proposing immediate settlement negotiations. *See* August 17, 2021 Correspondence, attached as Exhibit 1. Thereafter, in response to a request that SLG disclose the identities of any General Managers whom it had been retained to represent, SLG asserted by email on September 13, 2021 that it represented Samantha Leger, Aaron Perez, Eloy Torres, Jose Steven Cardenas, and Gabriel Djinn. *See* September 13, 2021 Email, attached as Exhibit 2. In a further correspondence on December 15, 2021, SLG asserted that it represented 11 former General Managers, but declined to disclose names "except for Aaron Perez and Kevin Nelson, who will serve as the Named Plaintiffs." *See* December 15, 2021 Correspondence, attached as Exhibit 3.

## II.    Discovery Debunks SLG's Claims about the Origin of this Lawsuit

After this case was filed and in the ordinary course of discovery, Defendant took the depositions of Named Plaintiffs. Each testified he or she was contacted by SLG about an "investigation" into claims on behalf of another, unidentified General Manager.[2] None of those

---

[2] *See* Deposition of Clark at 38:12-39:16, attached as Exhibit 4 (describing receipt of text from Attorney Donnell without prior contact: "she told me about the case"); Deposition of Coulter at 23:14-24:21, attached as Exhibit 5 ("I received a text from Loren, an attorney . . . Q Had you ever talked to or communicated with Loren in any way before this text? A. No"); Deposition of Perez at Dep. 16:10-14, attached as Exhibit 6 ("Q. How did you get involved in this lawsuit against MyEyeDr? A. I was messaged on LinkedIn."); Deposition of Nelson, attached as Exhibit

individuals had contacted or retained Plaintiffs' counsel for the purposes of exploring or pursuing claims against MyEyeDr. at the time that Plaintiffs' counsel initiated those communications. *Id.* Each testified that they believed someone else was the first person to assert a claim against the Company or had no information.[3]  That testimony also raised concerns about the candor of SLG's statements in the course of soliciting them to join the litigation. Clark Dep. 46:14-24 (agreeing she does not know if Attorney Donnell is admitted in Massachusetts but " would assume so.").

In addition, Nelson testified that he first became involved in this lawsuit as a result of an unsolicited phone call from SLG, an overt violation of the prohibition on "live person-to-person" solicitations imposed by Mass. R. Prof. C. 7.3.[4] Nelson Dep., 19:19-24. This information was particularly concerning because SLG has previously been sanctioned and disqualified by the Southern District of Florida and the Eleventh Circuit Court of Appeals for exactly such misconduct. *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338 (S.D. Fla. 2009) (disqualifying Shavitz Law Group from representing opt-in plaintiffs in litigation and imposing various remedial sanctions for prohibited telephone solicitation in context of supposed "investigation"); *Hamm v. TBC Corp.*, 345 F. App'x 406, 408 (11th Cir. 2009) (affirming disqualification and sanctions).

---

7 at 19:19-24 ("Well, I received a phone call and I was asked to – if I wanted to provide my experience working at MyEyeDr. because there may be a case about overtime.").

[3] Clark Dep. 40:5-19 ("Q. Is it your understanding that you were the first person to come forward to assert a claim like this? A. No. . . . I just thought that somebody else had already started it."); Coulter Dep 26:10-14 ("Q. Was any other individual plaintiff… involved at that point [when you got the text]? A. I have no idea."); Perez Dep. 18:7-15 ("Q. Do you know if the message mentioned any other individuals who had already filed a suit or were planning to sue? A. I don't remember that. … Q. Do you recall if the message said whether a suit had already been filed? A. I do not."); Nelson Dep. at 24:8-10 ("I believe the court filings show the names of the other plaintiffs in the case, lead plaintiffs, as I understood them to be.")

[4] While SLG's conduct in this matter is plainly already subject to the Massachusetts Rules of Professional Conduct (*See* D. Mass. Local Rule 83.6.1), the rule governing solicitation of clients in its home jurisdiction of Florida is substantively identical. *See* Florida R. Prof. C. 4-7.18 ("a lawyer may not … solicit in person … The term "solicit" includes contact …by telephone …").

In light of concerns raised by the testimony, Defendant attempted to confer with Plaintiffs' counsel, only to be met with incomplete and misleading representations about the provenance of this litigation. On February 27, 2023, Defendant wrote to SLG requesting that it identify the *first* client who retained SLG in this litigation, noting the testimony of the Named Plaintiffs disclaiming initiating this litigation, the testimony from Nelson about a phone call initiated by SLG, and other related concerns. *See* February 27, 2023 Correspondence, attached as Exhibit 8. SLG's responded on March 9, 2023, asserting that their firm was "first retained by Llorentis on July 30, 2021." *See* March 9, 2023 Response, attached as Exhibit 9. SLG provided a Legal Services Agreement with Llorentis that appeared to have been signed by Llorentis on July 30, 2021, but was not signed by SLG until August 3, 2022. *Id.* SLG further asserted that its contacts with other General Managers, including the four Named Plaintiffs, were in the course of "investigating Llorentis' claims." *Id.* SLG failed to address their facially improper phone call to Nelson. *Id.*

SLG's representations made little sense, in that Llorentis opted into the suit on February 15, 2022, and is not a Named Plaintiff. (Dkt. 4-1). Nor was he among the individuals whom SLG claimed to represent in pre-suit discussions with Defendant. *See* Exhibit 2. Moreover, SLG's February 2023 contentions that it was initially retained by Llorentis and communicated with other potential plaintiffs in conjunction with an "investigation" into Llorentis' claims also fails to comport with SLG's own records. A copy of the retainer agreement produced by SLG reflects that the firm did not enter into an engagement with Llorentis until August 3, 2022, six months after this case was filed. *See* Llorentis Retention of SLG (Dkt. 93-1 at 88-89).

Llorentis's own testimony also contradicted SLG's representations about his involvement and the origins of the case. Llorentis testified at his June 7, 2023 deposition that he first became involved when he received an unsolicited message on LinkedIn from SLG about an overtime

lawsuit for the misclassification of General Managers that was "going on." *See* Excerpt of Llorentis Deposition at 13-15, attached as Exhibit 10. Thus, Llorentis was under the impression that he was *not* SLG's first client. *Id.* Llorentis testified that he did not initiate contact with SLG, and only responded after receiving the LinkedIn message, which he claimed was no longer available. *Id.*

In light of the new information obtained during Llorentis's deposition and discrepancies in the information provided by SLG, Defendant continued to confer with SLG. On June 28, Defendant sent a letter to SLG noting Llorentis's testimony that he did not initiate contact with SLG and had received an unsolicited message about a lawsuit "going on." *See* June 28, 2023 Correspondence, attached as Exhibit 11. Defendant again requested the LinkedIn message from SLG to Llorentis and noted that when SLG first contacted Llorentis, it did not represent any current or former employees of Defendant, contrary to its representations to Llorentis about ongoing litigation. On July 7, SLG responded, attaching a form LinkedIn message that purported to correspond to the message that SLG sent to Llorentis. SLG did not attach the actual message it sent to Llorentis, claiming it was unavailable due to an undescribed "fraud incident." *See* July 7, 2023 Correspondence, attached as Exhibit 12. The form message stated that SLG was reaching out to Llorentis to inquire if he was "paid a salary but misclassified as exempt from overtime…" *Id.*

On August 25, Defendant responded, noting the discrepancy between Llorentis's testimony and SLG's form message, specifically, that the form message did not contain a reference to a lawsuit, as Llorentis described at his deposition. *See* August 25, 2023 Correspondence, attached as Exhibit 13. Defendant explained that in light of the discrepancies in SLG's accounts of the origin of this lawsuit, Defendant intended to seek discovery from SLG about their solicitation

activity and the identity of the individual(s) who retained SLG to commence this action. *Id.*[5] SLG did not respond. On August 29, Defendant's counsel asked SLG whether they would accept service of the subpoenas. SLG did not respond. On August 30, Defendant served the subpoenas at issue on SLG.  Fact discovery will close on September 29, 2023. (Dkt. 91).

### III.    SLG Produces New Materials Alongside its Motion for Protective Order

Notably, despite the parties' detailed conferrals, SLG made no effort to address Nelson's testimony about receiving an unsolicited phone call from SLG, ***until they filed their Motion*** on September 11. On that day, about an hour before filing their Motion, Plaintiffs produced SLG's written solicitation letter to Nelson, which they now allege preceded the phone call. With their Motion, Plaintiffs submitted a new declaration from Nelson, in which Nelson now attests that he first received a letter from SLG and that his testimony about an unsolicited phone call was "inaccurate," without any explanation as to why or how he inaccurately described a key moment at the outset of this case. *See* Nelson Declaration (Dkt. 93-1 at 60-61). Nor is this belated reversal in Nelson's story accompanied by any explanation as to why he failed to correct the testimony through the errata process, which he attested at deposition he understood. Nelson Dep. 6:7-20. Plaintiffs did not confer with Defendant about either piece of new information before filing their Motion, even though Defendant had asked about the phone call more than six months prior.

Similarly, less than an hour before filing their Motion, Plaintiffs first produced what they now purport to be the actual LinkedIn message from SLG to Llorentis, which they previously asserted to be unavailable, apparently in an attempt to support the assertion that Llorentis was

---

[5] Defendant also provided a declaration signed by a former Plaintiff, Angela Young, who was dismissed from the case for failure to participate in discovery. *Id*. In the declaration, Ms. Young explicitly waived the attorney-client privilege with respect to her prior representation by SLG and the other firms representing Plaintiffs and stated that she decided not to participate further in this case due to a "harassing letter" she received from Plaintiffs' counsel. *Id.*

wrong in his deposition when he testified that the initial LinkedIn message he received pertained to an ongoing lawsuit.[6] Plaintiffs explained for the first time in footnote 4 of their Motion that "Llorentis has since been able to access the actual message he received." (Dkt. 93 at 9). The recently-produced message still does not include a date that could corroborate or debunk the latest version of SLG's account of its solicitation of Llorentis. Thus, on September 19, 2023, Defendant again requested a dated copy of the message. SLG has not responded as of this filing.

As to the retention agreement, with their Motion, Plaintiffs provided – for the first time – the Signature Certificate for the Llorentis Legal Services Agreement showing that Llorentis digitally signed the Agreement on July 30, 2021. (Dkt. 93-1 at 89). Plaintiffs did not, however, provide a certificate for SLG's signature, which was the point Defendant had raised.

Plaintiffs produced other documents for the first time along with, or immediately before they filed, their Motion. These documents 1) were not previously produced; 2) are incomplete; and/or 3) were not offered as part of the conferral process. First, Plaintiffs produced two letters from SLG to The Florida Bar dated October 9, 2020 requesting approval of 9 "replacement" envelopes and 7 mail advertisements, without any attachments. *See* October 9, 2020 Correspondences, attached as Exhibit 14. These were not previously provided to Defendant, and SLG did not include the attachments accompanying their requests to The Florida Bar.

Second, Plaintiffs produced two letters from The Florida Bar approving 9 direct mail and 7 email "revised" advertisements dated October 30, 2020 and August 16, 2019. *See* Florida Bar

---

[6] At his deposition, Llorentis testified that he received a message from SLG on LinkedIn "relating to that this was going on." Llorentis Tr. 13. By "this," he meant, "the overtime lawsuit for the misclassification of general managers." *Id.* at 14. He testified unequivocally that before he reached out to SLG, that firm informed him that there were potential overtime claims against MyEyeDr., and he never contacted SLG to tell them he thought there was an issue with overtime. *Id.* at 17. When asked whether he had a copy of the LinkedIn message from SLG, Llorentis testified, "I don't believe so," and that he thought he had deleted it. *Id.* at 18-19.

Correspondences, attached as Exhibit 15. SLG had not previously provided these to Defendant. Because Plaintiffs did not include the attachments to their requests, Defendant cannot identify which version of advertisements were approved. Plaintiffs also produced one envelope, one solicitation letter, and one email solicitation on SLG letterhead, with no indication to which request those materials are intended to respond. *Id.*[7] As discussed below, even after the flurry of materials produced with their Motion, Plaintiffs continue to improperly withhold documents and assert privileges that do not exist, and the Court should order SLG to comply with the subpoenas.

## ARGUMENT

### I.     There are Ample Grounds Supporting Further Investigation into SLG's Solicitations

Plaintiffs' outrage is misplaced: Defendant has ample grounds to investigate SLG's solicitation activity, in light of SLG's extensive efforts to mislead or distract Defendant by providing partial or incorrect information in response to appropriate conferrals. First, Plaintiffs' contention that "Defendant seeks documents from SLG which were either voluntarily previously provided … or which plainly were protected from disclosures by the attorney-client and work product privileges" (Dkt. 93 at 12) is contradicted by the conferral record and the discussion of privilege in Section II below. Plaintiffs still have not produced non-privileged, relevant documents that are responsive to Defendant's discovery requests:[8] (1) Dated LinkedIn messages from SLG to Plaintiffs Llorentis and Perez; (2) list of recipients SLG is required to maintain pursuant to Florida

---

[7] Finally, in response to the Angela Young declaration Defendant produced, Plaintiffs provided SLG's letter and email to Ms. Young dated April 19, 2023, informing her that Defendant had requested that its attorneys' fees related to the motion to dismiss "be paid by you." *See* April 19, 2023 Correspondence, attached as Exhibit 16.

[8] Plaintiffs' certificate of conferral provides that SLG conferred by email with Defendant on September 11, 2023. (Dkt. 93 at 25). On that day, SLG produced documents at 7:16 p.m. and filed additional documents in support of their Motion less than an hour later, including documents they never mentioned during the parties' many conferrals.

Bar Rule 4-7.19(j); and (3) other non-privileged solicitations to Plaintiffs.

Second, SLG's own failures to provide complete and timely information resulted in the subpoenas. Defendant reasonably raised concerns about the unsolicited phone call to Nelson approximately seven months ago, on February 27, 2023, and SLG first provided information on that subject with their motion on September 11. Defendant reasonably expected SLG to respond with urgency, given that SLG had previously been sanctioned by a federal court for making unsolicited phone calls to potential clients in violation of the disciplinary rules. *Hamm*, 345 F. App'x at 408. Plaintiffs similarly failed to address Defendant's reasonable concerns about the discrepancies between Llorentis's and SLG's accounts of the inception of this case, including whether SLG misled Llorentis as to whether he was the first client. If SLG misled Llorentis as to his involvement, and used his status as the catalyst to contact other potential clients as part of an "investigation," SLG violated ethical rules. *See* Mass. R. Prof. C. 7.1, Comment [1] ("lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services"; "[m]isleading statements, even if truthful, are prohibited ...."); *see also* Mass. R. Prof. C. 4.1 ("In the course of representing a client a lawyer shall not knowingly ... make a false statement of material fact or law to a third person ..."); Florida Bar Rule 4-7.14 (prohibiting any "potentially misleading advertisement," including those subject to "varying reasonable interpretations, 1 or more of which would be materially misleading when considered in the relevant context.").

SLG's improper solicitations are relevant to at least three motions likely to be filed by the parties in this case. First, SLG's solicitations are relevant to Defendant's anticipated motion for decertification of the FLSA collective in this matter because improper solicitation can be grounds for decertification. *See DeWitt v. Gervasi Vineyard & Italian Bistro, LLC*, No. 5:22CV0476, 2023 WL 423244, at *6 (N.D. Ohio Jan. 25, 2023) (granting decertification of FLSA collective as

sanction for counsel's improper modifications of court-approved certification notice and process, dismissing opt ins and prohibiting counsel from representing those individuals in separate case) (citing *Hamm*, 345 F. App'x at 409); *Evans v. Comcast Corp.*, No. 12-81203-CIV, 2013 WL 12139329, at *3 (S.D. Fl. July 3, 2013) (granting motion to compel pre-suit solicitations sent by SLG and responses as relevant "to argue against collective action certification").

Second, SLG's solicitations are relevant to Plaintiffs' anticipated motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs have asserted two Rule 23 classes: a class represented by Nelson on behalf of individuals who worked in Pennsylvania (Dkt. 12 ¶¶ 90-101, 147-156), and a class represented by Clark and Coulter on behalf of individuals who worked in Massachusetts (*id*. at ¶¶102-113, 157-163). SLG's solicitations and ethical misconduct are relevant to the requirement that the Court find adequacy of counsel pursuant to Rule 23(g). *See* Fed. R. Civ. P. 23(g); *Rodriguez v. Kaiaffa, LLC*, No. X07HHDCV176088349S, 2023 WL 3596188, at *5 (Conn. Super. Ct. Complex Lit. Dkt. May 15, 2023) (noting "a lawyer's unethical conduct, both before and during the litigation in question, is relevant to determining whether counsel is adequate under Rule 23" and denying motion to decertify); *Pilcher v. Direct Equity Lending*, Civ. No. 99–1245, 2000 WL 33170865, at *3 & n.6 (D. Kan. Dec. 22, 2000) (granting motion to compel communications with individual who referred plaintiffs to counsel, noting that "[a]ctions by or on behalf of plaintiffs' counsel may be considered in the determination of class certification" because "[p]rocedural irregularities or improper communications to prospective class members are grounds for denying class certification.") (citing Fed. R. Civ. P. 23). Specifically, pursuant to Rule 23(g), this Court will be required to "consider all matters which may be germane to whether or not proposed class counsel … are able to fairly and adequately protect the interests of the class," including the propriety of Plaintiffs' counsel's "litigation-related

conduct." *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6939338, at

*17 (W.D.Ky. Feb. 16, 2017) (quoting *Montano v. Chao*, 2008 WL 5377745, at *4–5 (D. Colo.

Dec. 19, 2008) (granting motion to compel counsel's solicitation letters and factual

communications with potential class members)); *see also Creative Montessori Learning Ctrs. v.*

*Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir. 2011) (vacating class certification and ordering

that trial court "re-evaluate the gravity of class counsel's misconduct and its implications for the

likelihood that class counsel will adequately represent the class," noting that a "serious . . . ethical

violation . . . should place on class counsel a heavy burden of showing that they are adequate

representatives of the class"). As the *Brown* court explained, excluding discovery related to Rule

23(g) adequacy of counsel would result in the Court being "forced to rely exclusively on the very

counsel who potentially have had the ethics of their litigation-related conduct called into question

to provide us with information about such alleged conduct." *Brown,* 2017 WL 6939338, at *17.

Third, SLG's solicitations are relevant to Defendant's potential motion to disqualify SLG

and/or for sanctions. *See Shibetti v. Z Rest., Diner & Lounge, Inc*., No. 18-CV-856 (BMC), 2021

WL 1738315, at *1 (E.D.N.Y. May 3, 2021) (granting motion for sanctions against plaintiffs'

counsel due to improper direct phone solicitations and ordering counsel to pay $1,000); *O'Connor*

*v. Uber Techs., Inc*., No. 13-CV-03826-EMC, 2017 WL 3782101, at *8 (N.D. Cal. Aug. 31, 2017)

(concluding that plaintiffs' counsel's correspondence with class members violated ethics rule and

granting motion for sanctions in part, ordering counsel to send corrective notice to class members

stating they were not required to retain plaintiffs' counsel); *Hamm*, 345 F. App'x at 409.

Finally, the deposition of SLG's representative is appropriate given the long history of

conferrals between the parties and obfuscations by SLG. *See E.E.O.C. v. CRST Van Expedited,*

*Inc*., No. C07-0095, 2009 WL 136025, at *4 (N.D. Iowa Jan. 20, 2009) (compelling deposition of

EEOC representative). For example, in *CRST Van Expedited*, the court ordered the Equal Employment Opportunity Commission to "provide a Rule 30(b)(6) witness to testify regarding contacts made with current and former employees in an effort to solicit their entry into the class," including all representations the EEOC made "in an effort to induce participation by potential class members." *Id.* The court determined that representations the EEOC made to prospective class members about potential financial benefit from the lawsuit prior to their agreeing to join the class were relevant because "when and why a claimant joined in the class is relevant to the issue of her credibility." *Id.* at 4-5. Because the discovery deadline had expired, the court concluded there was "no other practical means of obtaining the information regarding what representations were made to prospective class members." *Id.; see also Versatile Housewards & Gardening Sys., Inc. v. Thill Logistics Inc.*, 09 Civ 10182 (KMK) (PED), 2010 WL 11601216, at *3 (S.D. N.Y. Dec. 6, 2010) (denying motion to quash subpoena for attorney deposition, noting "the need for the discovery, the plainly unprivileged nature of many of [the attorney's] activities, the evidence of possible fraud and misconduct by [the attorney], and other considerations are sufficiently great to require that [the attorney] respond") (quoting *In re Chevron Corp.*, 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, *4 (S.D.N.Y. Nov. 10, 2010)). Similarly here, the discovery deadline will expire on September 29, 2023, and Plaintiffs/SLG delayed and/or produced incomplete, undated solicitations. And in its Motion, SLG continues to object to Defendant re-opening the deposition of Llorentis about his late and incomplete production of the LinkedIn message. (Dkt. 93 at 20-21). The deposition of SLG is the only practical means of obtaining the information. *Id.*

While Plaintiffs rely on *Valentin v. Town of Natick*, 343 F.R.D. 452, 457 (D. Mass. 2023) in a bid to avoid providing further information, they fail to inform the Court that the *Valentin* court *denied* a motion to quash a deposition subpoena to the party's attorney, thus allowing the

deposition to proceed, noting that even though "[d]eposing a party's lawyer is a perilous proposition," the requesting party had "adequately exhausted other viable means of obtaining the information sought." *Id.* The court outlined attempts to obtain the information sought, including written discovery requests, to which the party objected on the grounds of privilege, and depositions of non-attorneys who could not recall the substance of conversations with the attorney. *Id.* at 458 (explaining "Plaintiffs hit a brick wall when it came to [non-attorney witnesses'] lack of recollection."). The court also made itself "available to make real-time privilege determinations" in light of the "heightened potential for privilege issues at stake in the deposition of an attorney." *Id.* at 457.[9] Similarly, here, Defendant sought information about SLG's solicitations through all available means, including written discovery requests to the Plaintiffs and SLG, and depositions of the Plaintiffs, at which Plaintiffs provided incomplete or materially erroneous testimony.

Finally, Plaintiffs waived any objections to discovery requests pertaining to SLG's solicitation activity. On April 22, 2022, Defendant requested of Named Plaintiffs all "communications (including but not limited to letters, emails, texts, and social media messages) that you sent to or received from any attorney or other law firm employee before the inception of an attorney-client relationship during or after your employment with Defendant that in any way concern your job duties or claims against Defendant." *See* Defendant's First RFPs to Named Plaintiffs at Request 29, attached as Exhibit 17. In their responses served on September 9, 2022, Named Plaintiffs initially objected to the Request on work product grounds only. *See* Clark's Responses, attached as Exhibit 18. As a result of the parties' conferrals, Named Plaintiffs later produced Plaintiffs' counsel's text messages to Clark and Coulter and an undated LinkedIn

---

[9] The court allowed the deposition to proceed even though sensing "a distinct scent of harassment in the air" because plaintiffs began the discovery process with the subpoena to the attorney. *Id.* at 459. Here, Defendant served the subpoenas after six months of conferrals.

message to Perez, *see* February 27, 2023 Correspondence, Exhibit 8, and with their motion, a letter to Nelson. (Dkt. 93-1 at 58).[10] SLG has thus selectively produced information that relates to communications with Plaintiffs in this matter before those individuals retained SLG, waiving any relevance, privilege and work product objections. The documents and information sought by Defendant's discovery requests are relevant, Plaintiffs waived any objection, and the deposition of SLG is appropriate because Defendant has exhausted other viable means to obtain the information.

## II. Plaintiffs' Assertions of Privileged are Overbroad, Misplaced, and Not Substantiated by their Deficient Privilege Log

Plaintiffs have no factual or legal basis for the assertions of privilege in response to the discovery requests that are the subject of their Motion. Pre-suit communications with prospective clients that precede any attorney-client relationship are not privileged because the prospective client have no subjective expectation of a privileged relationship. *In re Eddy*, 304 B.R. 591, 596 (D. Mass. 2004) (Where there is "no reasonable expectation of confidentiality, the attorney-client privilege is unavailable"); *ACQIZ, LLC v. EMC Corp.*, 2017 WL 2818984, at*2 (D. Mass. June 29, 2017) (attorney-client privilege only protects communications when the client has "the expectation that [the communications] be protected from disclosure by himself or by the legal adviser"). Similarly, SLG's pre-suit solicitation efforts are not protected work product. *Fangman v. Genuine Title*, *LLC*, No. CV RDB-14-0081, 2016 WL 3362538, at *2–4 (D. Md. June 17, 2016) (concluding solicitations to potential plaintiffs were not protected work product and ordering counsel to produce solicitations as well as lists of individuals who received solicitations). Even if solicitations were protected by the attorney-client privilege or work product doctrine, Plaintiffs

---

[10] Defendant served a similar request as one of *just five* requests to Llorentis and the other 59 Discovery Opt Ins. *See* Defendant's First RFPs to Llorentis at Request 5, attached as Exhibit 19. Llorentis did not object to the Request: "Plaintiff will produce responsive documents." *See* Llorentis Response, attached as Exhibit 20.

and SLG waived that privilege by failing to provide a compliant privilege log. *See In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001).

### A.      SLG's Solicitation Efforts Are Not Protected by the Attorney-Client Privilege or Work Product Doctrine

SLG's solicitation efforts are not privileged because they preceded the inception of any attorney-client relationship, and there is no attorney-client privilege where there is no attorney-client relationship. *Petry v. Prosperity Mortg. Co.*, No. WMN-08-1642 (D. Md. Aug. 13, 2010) ("solicitation letters are not privileged because an attorney-client relationship had not yet been established"). In fact, courts frequently order the production of solicitation efforts. *See CRS Van Expedited,* 2009 WL 136025 at *4 (ordering production of EEOC's solicitation letter); *Fangman,* 2016 WL 3362538 at *2–4 (ordering production of solicitation letters); *Evans,* 2013 WL 12139329, at *3 (same). Attorneys' solicitation letters to prospective clients are not privileged "regardless of whether the sending of them was in furtherance of the interests of existing clients" because to hold otherwise "would take the attorney-client privilege to a galaxy far, far away from its roots and one that it is unnecessary to visit." *Auscape Intern. v. Nat'l Geographic Soc.*, 2002 WL 31250727, at *1 (S.D.N.Y. Oct. 8, 2022) (granting motion to compel solicitations). Even if SLG represented at least one client at the time it sent solicitation letters to other prospective clients, which is still unresolved, solicitation letters to other prospective clients are not privileged. *Id.*

Solicitation letters are also not protected work product. Fed R. Civ. Pro. 26(b)(3)(A); *Fangman*, 2016 WL 3362538, at *2–5; *CRS Van Expedited*, 2009 WL 136025, at *4 (granting motion to compel because "solicitation letters sent by EEOC to prospective class members or oral representations made to prospective class members, prior to the establishment of an attorney-client relationship, are discoverable"); *see also Holmes v. Quest Diagnostics, Inc.,* No. 11-80567-CIV, 2012 WL 13113976, at *11 (S.D. Fla. July 12, 2012) (identities of individuals law firm contacted

in connection with this litigation are not work product). Defendant is entitled to discovery of the solicitations, including the identities of individuals SLG attempted to contact, particularly given SLG's repeated misrepresentations about how this case came to be. The work product doctrine does not shield the identity of persons whom the opposing party chooses to contact for information relevant to the case. *See, e.g., Miller v. Ventro Corp.*, 2004 WL 868202 at *2 (N.D. Cal. Apr. 21, 2004); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 635–36 (N.D. Ga. 2002).[11]

The cases Plaintiffs cite in an effort to protect their communications with individuals whom they did not represent fail to establish that the information being withheld is protected by privilege or work-product. First, Plaintiffs' reliance on *Mass. v. First Nat'l Supermarkets, Inc.,* 112 F.R.D. 149 (D. Mass. 1986) is misplaced. In that case, the plaintiff sought to compel discovery of the identities of individuals whom the defendant's attorney had interviewed prior to litigation, at a time when he had already been retained by the defendant to conduct an internal investigation into antitrust violations expected to lead to litigation. 112 F.R.D. at 151. In fact, the cases Plaintiffs cite pertain to communications/documents post-dating the inception of an attorney-client relationship, *not* improper solicitations or comparable circumstances, are out of circuit, and several are outdated.[12] Defendant is not probing SLG's litigation strategy or mental impressions. To the

---

[11] Defendant's substantial need also warrants production. *See CRS Van Expedited*, 2009 WL 136025 at *3 (opposing party had substantial need for solicitations that could not be obtained by other means); *Bramble v. Wal-Mart Stores, Inc*., 2011 WL 444186, at *1 (E.D. Penn. Feb. 7, 2011) (compelling discovery of identities of 14 contacted putative class members).

[12] *See Callaway v. Papa John's USA, Inc.,* 2010 U.S. Dist. LEXIS 113274, at *18-19 (S.D. Fla. Oct. 12, 2010) (identities of recipients of communications subsequent to filing of lawsuit were protected work product); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007) (individuals who assisted with responses to interrogatories during litigation are work product); *Morgan v City of New York*, 2002 WL 1808233, at *2 (S.D.N.Y. Aug. 6, 2022) (allowing discovery of identities of persons with knowledge of facts but denying discovery of each person contacted by the plaintiff); *O'Donnell v. Harris County*, No. 4:16-cv-01414 (S.D. Tex. Jan. 11, 2017) (addressing production of interviews undertaken by investigator in context of litigation, with no suggestion that investigator had no client).

98188773v.5

contrary, Defendant's requests are narrowly tailored to information necessary to assess whether this case originated from unethical conduct. Plaintiffs' privilege assertions are improper.

**B.    Plaintiffs Have Waived Privilege and Work Product Protections by Failing to Provide a Compliant Privilege Log**

Plaintiffs have waived any privilege or work product protection that could apply to the materials that are the subject of their Motion by failing to provide a compliant privilege log, as the rules require. *See In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); *Neelon v. Krueger*, No. 12-cv-11198-IT, 2015 WL 1037992, at *1 (D. Mass. Mar. 10, 2015) (plaintiff waived privilege by failing to produce adequate privilege log, except as to certain documents).

On September 11, the day they filed their Motion, Plaintiffs first produced a privilege log that lists, in part, communications with 21 individuals withheld on the basis of attorney-client privilege/work product, and a "list of General Managers/General Managers in Training" withheld on the basis of alleged work product.[13] Exhibit 21 (Plaintiffs' Original Privilege Log). Plaintiffs improperly consolidated messages spanning multiple days or weeks into single entries, offering only the boilerplate, vague description "Messages regarding employment with MyEyeDr." On September 13, 2023, Defendant notified SLG that the privilege log failed to satisfy the requirement to "describe each document and its contents with sufficient detail to allow the court to determine whether the elements of the … privilege have been established." *Fine v. Sovereign Bank*, No. 06-11450-NG, 2008 WL 11388663, at *9 (D. Mass. Mar. 7, 2008) (quotation omitted). Defendant

---

[13] The Federal Rules of Civil Procedure govern discovery, not the Florida Bar Rules. (Dkt. 93 at 18). While the Florida Bar Rules may not independently require production of the subject materials, those rules do not address discoverability.

explained, with citations,[14] that the log failed to identify (1) the nature/type of communication (i.e., text message, email, LinkedIn); (2) the number of messages exchanged in total; (3) the number of messages exchanged on any given day; (4) the author of any individual message; (5) who initiated any given communication; and (6) sufficient detail regarding the subject matter of the messages to support an assertion of privilege. *Neelon,* 2015 WL 1037992, at *3. Given the initial dates of communications, Plaintiffs also were improperly withholding SLG's non-privileged solicitations. Defendant requested that Plaintiffs address the deficiencies.

Today, September 25, SLG produced an Amended Privilege Log. Defendant is still in the process of reviewing Plaintiffs' last minute production.[15] To the extent Plaintiffs have failed to remedy any of the above-referenced deficiencies, they have waived privilege and work product protections. *See Neelon,* 2015 WL 1037992, at *2. Upon preliminary review, the Amended Log shows improper withholding of documents that are not protected by any privilege or work product protection. *See* Exhibit 22 (Plaintiffs' Amended Privilege Log). First, SLG appears to be withholding initial communications to potential plaintiffs other than the Named Plaintiffs.[16] For example, when sorted by date, the first entry on Plaintiffs' Amended Log after a communication with ethics counsel is an email dated April 29, 2021 from Attorney Jones to Charity Finnerty, a former General Manager who later opted into this suit in June 2022, four months after the suit was filed. *Id.* There is no basis to conclude Finnerty was a client in April 2021, and Finnerty was not listed by SLG in its pre-suit communications. As discussed above, neither the attorney-client

---

[14] *Harpel v. Nicholson*, No. 12-10280-RWZ, 2013 WL 5466636, at *1 (D. Mass. Oct. 1, 2013) (log "lacks the detail necessary to establish grounds for privilege"); *In re GE ERISA Litig.*, No. 1:17-cv-12123-IT, 2022 WL 247719, at *7 (D. Mass. Jan. 26, 2022) (requiring defendants to update privilege log "so Plaintiffs…can adequately assess Defendants' claim of privilege").
[15] The Amended Privilege Log fails to include the titles of the individuals listed.
[16] Plaintiffs have not logged *any* pre-suit communications with Named Plaintiffs Clark, Coulter or Nelson.  It is hard to believe SLG did not exchange communications before filing suit.

privilege nor work product doctrine apply to mere solicitation efforts. Second, the Amended Privilege Log appears to show that some potential plaintiffs initiated communications with SLG.[17] Plaintiffs nonetheless claim that the communications are protected as work product. Pre-suit, non-privileged communications from potential plaintiffs regarding solely factual information relevant to this case are discoverable. *See Gates v. Rohm and Haas Co.,* 2006 WL 3420591, at *3 (E.D. Penn. Nov. 22, 2006) (dispositive factor in determining whether questionnaires completed by putative class members is "whether the putative class members were seeking legal advice or representation at the time they filled out the questionnaires"); *Vallone,* 2002 WL 1726524, at *1 (work product protection did not apply to questionnaires completed by putative class members). Plaintiffs' Amended Privilege Log does not substantiate their claims of protection.

### III.   There are Ample Grounds to Re-Open Plaintiff Llorentis' Deposition

Defendant has repeatedly asked for the dated message, including in discovery requests to Llorentis, during his deposition, after his deposition, during the conferrals and most recently, on September 19 after Plaintiffs/SLG filed the Motion attaching the undated message. Defendant noticed the deposition of Llorentis for a date before the close of fact discovery and held that deposition in abeyance only after Plaintiffs and SLG filed the Motion. Defendant should be permitted to briefly reopen Llorentis's deposition.

### <u>CONCLUSION</u>

WHEREFORE, Defendant respectfully requests that the Court deny the Motion and grant

---

[17] The only solicitations SLG and Plaintiffs have produced are texts to Clark and Coulter, a letter to Nelson and undated LinkedIn messages to Perez and Llorentis.  For every other Plaintiff, Defendant assumes the first entry in the Amended Privilege Log constitutes that individual's first communication with SLG and SLG is taking the position that communication is privileged or work product. To the extent these communications post-dated solicitations sent by SLG, SLG has failed to produce or identify such communications.

such other and further relief as the Court deems just and proper.

Dated: September 25, 2023            Respectfully Submitted,

DEFENDANT CAPITAL VISION SERVICES,
LLC d/b/a MYEYEDR.,

By Its Attorneys:

*/s/ Hillary J. Massey*
Barry J. Miller (BBO# 661596)
bmiller@seyfarth.com
Hillary J. Massey (BBO # 669600)
hmassey@seyfarth.com
Molly C. Mooney (BBO # 687812)
mmooney@seyfarth.com
Emily J. Miller (BBO # 705662)
emmiller@seyfarth.com
Abigail D. Skinner (BBO # 709705)
askinner@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile:  (617) 946-4801

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023 a copy of the foregoing document was filed through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Hillary J. Massey*
Hillary J. Massey

98188773v.5