

December 15, 2021

Kevin McCoy  
Senior Employment Counsel/Operations  
Capital Vision Services, LLC  
1950 Old Gallows Road, Suite 520  
Vienna, VA 22182  
Kevin.mccoy@myeyedr.com

**Via USPS Mail and Email**

Dear Mr. McCoy:

The law firm of Burr & Smith, LLP is working with the Shavitz Law Group, PA ("Plaintiffs' counsel") in investigating claims of General Managers for MyEyeDr. who claim they were misclassified as exempt employees under the Fair Labor Standards Act and were denied overtime compensation for the many hours they worked in excess of 40 hours a week.

In your response dated September 2, 2021 to Shavitz Law Group, you noted the lack of factual support for the allegations in the initial correspondence on this matter, including a failure to provide the number of clients asserting these claims, the number of the states or offices in which they worked, and details with regard to the non-exempt work they claim to perform. This letter provides this information. We have also attached a draft complaint we are prepared to file if the company does not wish to engage in pre-suit discussions. We believe discussions about the claims and litigation are in the best interest of all parties at this early stage and could lead to an amicable resolution.

## Factual Support For Claims

Plaintiffs' counsel represents 11 former General Managers for MyEyeDr. who worked for MyEyeDr. in seven states, Indiana, Connecticut, Maryland, North Carolina, Pennsylvania, Texas, and Virginia. Plaintiffs' counsel will not disclose their names at this time except for Aaron Perez and Kevin Nelson who will serve as the Named Plaintiffs. Regardless of state, store location, or store size or volume, the allegations of the 11 Plaintiffs are essentially the same. They spent the majority of their day (approximately 80% percent) performing non-exempt hourly work, i.e., the exact same work as eyewear consultants and front desk personnel in their stores. Indeed, Plaintiffs refer to themselves as "super eyewear consultants." As detailed further below, and as alleged in the attached draft complaint, when the actual reality of the General Managers' work is evaluated under the law governing the executive exemption to the FLSA, Plaintiffs and those deemed similarly situated to them will be due overtime compensation as non-exempt employees.

For General Managers at MyEyeDr. to qualify for the executive employee exemption, each and every one of the following requirements must be established by MyEyeDr.: (1) The employee



Kevin McCoy
December 15, 2021
Page 2

must be compensated on a salary basis (as defined in the regulations) at a rate not less than $684 per week; (2) The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise; 3) The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and (4) The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. 29 CFR § 541.100. The exemption does not apply unless MyEyeDr. is able to meet each requirement clearly and with affirmative evidence. *See Gregory v. First Title Of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009). Plaintiffs' focus is on requirements two through four. Plaintiffs do not have enough information at this stage to evaluate whether MyEyeDr. could meet the first requirement, *i.e.*, the salary basis test.

As to the second factor, the primary duty of General Managers is not management. Pursuant to the regulations interpreting the FLSA, "'primary duty' means the principal, main, major or most important duty that the employee performs." 29 CFR § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id*. In determining the "primary duty," the regulations consider: "(i) the relative importance of the exempt duties as compared with other types of duties; (ii) the amount of time spent performing exempt work; (iii) the employee's relative freedom from direct supervision; and (iv) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id*.

Plaintiffs contend that their primary duty as General Managers for MyEyeDr. is the same customer service duty required by all employees and particularly eyewear consultants and front desk employees. General Managers allege that they spent the majority of their day (80% or more) providing customer service to customers as "super eyewear consultants" helping customers pick out frames and welcoming them into the stores, and as front desk employees checking in customers for appointments, answering phones, scheduling appointments, and processing insurance. *See* Draft Complaint, ¶¶ 6, 37. The duties regularly performed by General Managers can be performed by any other employee working in the store. *Id*., ¶ 7. With regard to General Managers' freedom from direct supervision, there is little freedom exercised by MyEyeDr. General Managers. General Managers are constrained by corporate rules and guidelines and are closely supervised by District Managers. *Id*., ¶ 40. General Managers are required to keep District Managers informed on a daily basis of the status of all customer orders. *Id*. Indeed, District Managers are highly involved in the operation of the stores, including but not limited to approving customer refunds, setting pay, hiring store staff, firing store staff, approving vacation, and approving overtime. *Id*., ¶ 41. Plaintiffs' report that if an employee was to be unexpectedly out sick, they were to contact the District Manager not the General Manager to inform of the absence. As for the relationship between General Managers' wages and that of other store employees, it is reported by Plaintiffs that the difference in wages was mere dollars. One Plaintiff reported that her effective hourly rate for the

hours she worked was approximately $20 per hour and that eyewear consultants earned appropriately $17-$18 per hour.

The regulations further explain that "generally 'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 CFR § 541.102. With regard to these factors, General Managers are rarely in charge of these tasks. General Managers are seldom involved in interviewing store employees and do not select workers for stores; they do not set or adjust rates of pay; they cannot commit MyEyeDr. in matters having significant financial impact; they cannot schedule overtime hours without approval from their District Managers; they do not determine the techniques that could be used in the stores; they do not monitor or implement legal compliance measures; they cannot fire, hire, or change status of associates, nor give raises or discipline employees. *Id*., ¶ 41). The training of new store staff is collectively performed by current store employees. Store employees' schedules are highly constrained by store budgets that General Managers do not determine and cannot change. *Id*. There is little General Managers can do to increase profitability of their stores. Store budgets are not in their control, the amount and type of merchandise they are permitted to order is dictated by MyEyeDr., the staffing of the store is determined by the District Manager, and hours permitted to be worked by other store employees (i.e., no more than forty hours a week) is determined by the District Manager. *Id*. Thus, the factors evaluated in second requirement of the executive exemption strongly support Plaintiffs' allegations that they were misclassified as exempt.

As to the third requirement, "the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent" –at times, and specifically during the pandemic, General Managers did not customarily and regularly direct two or more full-time employees. All Plaintiffs express that stores were severely understaffed. MyEyeDr. is vulnerable to liability as to this requirement for certain General Managers during certain time periods, which should be a concern for MyEyeDr.

Finally, Plaintiffs contend MyEyeDr. will not be able to meet its burden on the fourth requirement of the executive exemption, because Plaintiffs did not have "the authority to hire or fire other employees" and their suggestions or recommendations regarding the staffing of stores was given no weight. *See Id*. Plaintiffs were not permitted to hire or fire store employees. Often

Kevin McCoy
December 15, 2021
Page 4

newly hired employees were placed in their stores with no input from them at all. Further, they were not permitted to fire employees. The District Manager for each of Plaintiffs' stores was responsible for terminations. If MyEyeDr. is unable to meet its burden of proof for this fourth requirement of the test, Plaintiffs will prevail in their overtime claim. Plaintiffs believe this allegation is common to all General Managers.

## Litigation

Plaintiffs intend to file their case in federal court in Indiana where MyEyeDr. has 41 stores. Shavitz Law Group recently obtained nationwide conditional certification in *McColley v. Casey's Gen. Stores, Inc.*, for store managers on March 31, 2021 in Northern District of Indiana. *See McColley v. Casey's Gen. Stores, Inc.*, No. 2:18-CV-72 DRL-JEM, 2021 WL 1207564, at *1 (N.D. Ind. Mar. 31, 2021). The Seventh Circuit endorses the lenient standard for conditional certification. *Id.* at *2. The facts in this case, which will be supported by declarations of at least 11 Plaintiffs and Opt-in Plaintiffs, will undoubtedly be certified. Litigation of FLSA collective actions require the expenditure of significant resources in both time and money. Plaintiffs will take Fed. R. Civ. Pro. 30(b)(6) depositions of the corporate witnesses and MyEyeDr. will likely seek to depose some Plaintiffs who reside in numerous states. In these cases, electronic discovery is essential and will require MyEyeDr., with the assistance of counsel, to cull and produce emails, text messages, software reports, employee data, payroll data, scheduling data, etc., which will can be a time consuming and expensive endeavor. The case may require expert testimony. Importantly, the case will not be resolved in the Seventh Circuit at summary judgment and short of settlement will proceed to trial. *See Jackson v. Go-Tane Servs., Inc.*, 56 F. App'x 267, 273 (7th Cir. 2003) (denying summary judgment to employer on store manager overtime claims and stating "[g]iven that the record establishes that Jackson spent the *overwhelming majority* of his time—95% of his workday—performing the duties of a Car Wash attendant, and that he was vested with *little to no independent authority* in the performance of his limited managerial duties, it is difficult to ascertain how Go–Tane could have believed that Jackson qualified as a "bona fide executive" under FLSA"); *see also Grass v. Damar Servs., Inc.*, No. 1:13-CV-00310-JMS, 2014 WL 2773027, at *15 (S.D. Ind. June 19, 2014) (denying summary judgment for location maintenance manager and recognizing the "[d]etermination of the primary duty issue is critical to resolving whether Mr. Grass is an exempt employee, and involves resolving factual disputes and making value judgments—a prohibited practice for a court at the summary judgment stage, and one to be performed by the jury at trial"). In our experience, pre-suit discussions and a structured settlement process, that still allows the parties to advocate their respective positions on the merits but side step the costly process of full litigation, will save MyDrEye. substantial attorneys' fees, costs and expenses, and save the Plaintiffs the value of time and the cost of delayed compensation.

Kevin McCoy
December 15, 2021
Page 5

## Proposal

We propose that the parties enter to a tolling agreement and document exchange agreement for purposes of engaging in fact finding that could lead to a resolution of the overtime claims of Plaintiffs and other similarly situated General Managers. At the conclusion of this process, the parties can evaluate whether to participate in mediation. In this process, the parties will have control over of the claims asserted, the venues selected, and the resolutions reached—which they will not have in litigation. We are amendable to ideas you may have to the same end.

Please contact us by December 29, 2021 if your client is interested to discussing this further.

Sincerely,

Sam J. Smith
Loren B. Donnell
Burr & Smith, LLP

Gregg I. Shavitz
Camar Jones
Shavitz Law Group, PA

Enclosure