## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARY ALICE CLARK and CHRISTOPHER
COULTER, ,

          Plaintiffs,

v.

CAPITAL VISION SERVICES, LLC d/b/a
MYEYEDR,

          Defendant.

Civil Action No. 1:22-cv-10236-DJC

## PLAINTIFFS' *UNOPPOSED* MOTION FOR APPROVAL OF FAIR
## LABOR STANDARDS ACT SETTLEMENT

Plaintiffs, MARY ALICE CLARK and CHRISTOPHER COULTER, by and through their counsel, hereby move this Court for an Order approving their Fair Labor Standards Act settlement with Defendant as fair and reasonable. In support of their motion, Plaintiffs further state as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

After over three years of hard-fought litigation, the parties have resolved this action on behalf of Named Plaintiffs Clark and Coulter as memorialized in the settlement agreements between the parties. Ex. 1 (Composite Settlement Agreements). This action was filed in February 2022. In the initial Complaint (ECF No. 1), then Plaintiffs Mary Clark, Christopher Coulter, Kevin Nelson, and Aaron Perez alleged that, during their employment as GMs, MED classified them as exempt from overtime provisions of the FLSA. Plaintiffs sought to recover overtime compensation on behalf of themselves and similarly situated individuals who were employed by Defendant as salaried, exempt-classified GMs across the United States. Plaintiffs filed an Amended Complaint (ECF No. 2) adding a count for unpaid overtime on behalf of individuals who participated in

Defendant's GM training program and were titled GMITs.    Plaintiffs Clark and Coulter additionally alleged claims pursuant to Massachusetts Wage Laws M.G.L. c. 151, §§ 1A and 1B ("MWL") for unpaid overtime on behalf of themselves and other GMs employed by Defendant in Massachusetts.    Similarly, Plaintiff Nelson brought an action on behalf himself and other salaried, exempt-classified GMs employed in Pennsylvania pursuant to Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* (the "PMWA") for unpaid overtime wages.

On April 14, 2022, Plaintiffs filed their Motion for Conditional Certification pursuant to Section 16(b) of the FLSA to have the GMIT and GM collectives conditionally certified. (ECF No. 20). The Court granted the Motion on July 22, 2022 (ECF No. 42).    Plaintiffs hired a third-party notice administrator to facilitate notice issuance to 1,634 individuals. Ultimately approximately 300 individuals opted into this action in response to the notice.

The parties proceeded with discovery during which Defendant served interrogatories and Requests for Production on 60 Opt In Plaintiffs and the Named Plaintiffs. Additionally, Defendant deposed 24 Plaintiffs, and Plaintiffs deposed 8 District Managers ("DMs") who supervised the Plaintiffs, as well as Defendant's corporate representative witnesses pursuant to Fed. R. Civ. P. 30(b)(6).    Some of these depositions were held outside of Massachusetts, requiring travel to Indiana, Colorado, Pennsylvania, and North Carolina. Plaintiffs also hired an expert witness, a statistical expert, Dr. Liesl M. Fox, to analyze Defendant's payroll records. Specifically, the data covered a five-year period and included 95,400 rows of data, with 81 different earnings codes. The parties also negotiated ESI discovery and productions, engaged in extensive meet and confers,

and filed and argued multiple motions to compel when conferrals were unsuccessful. Ultimately, at the end of discovery, the parties had exchanged over 144,000 documents.

At the end of the discovery period, Plaintiffs filed their motion for class certification of the Massachusetts and Pennsylvania claims (ECF No. 165). Plaintiffs also filed a motion for partial summary judgment (ECF No. 180) on the bases that: (a) Plaintiffs were not exempt from overtime while employed as GMITs; (b) to the extent MED deducted from any Plaintiff's compensation for taking a partial day off, the Plaintiff was not exempt during that workweek; (c) Plaintiffs were not exempt under the FLSA's executive exemption to the extent they did not customarily and regularly direct the work of two or more employees; (d) Plaintiffs' salary as GMs and GMITs was intended to compensate them for 45 hours of work per week, and therefore to the extent they worked more than 45 hours a week, their damages were to be calculated on a time and a half basis; and (e) Plaintiffs were entitled to liquidated damages because there was no evidence that Defendant acted reasonably in good faith to ascertain whether classifying GMITs and GMs as exempt complied with the FLSA. Defendant filed a motion for decertification (ECF No. 211), and a motion to strike Plaintiffs' expert witness (ECF No. 208). After an in-person hearing on these motions, the Court denied the class certification motions and granted Defendant's decertification motion and motion to strike. (ECF No. 241). By granting the decertification motion, the Court dismissed the Opt In Plaintiffs from this action. The Court also transferred Plaintiff Kevin Nelson's case to the Middle District of Pennsylvania, Philip Roscher's case to the Southern District of Florida, and Aaron Perez's case to the Southern District of Indiana. Therefore, only the claims of Clark and Coulter remain.

The Court then scheduled an Initial Pretrial Conference for June 12, 2025, and required the parties to submit a joint pretrial memorandum pursuant to Local Rule 16.5(d), proposing deadlines

for the filing of motions in limine, proposed jury instructions, proposed voir dire and a proposed trial date. (ECF No. 252). The parties discussed potential of settling the case. The parties agreed to attend mediation in person in Boston, Massachusetts on July 1, 2025 with mediator Chuck Stohler, Esq., who is well-versed in wage and hour law. After a day of mediation, the parties reached a settlement of the claims of Plaintiff Clark and Coulter.[1]

## THE SETTLEMENT'S TERMS

### I.    Settlement Payments

The terms of the settlement provide $2,550.00 in damages to each Plaintiff, and separately negotiated fees and costs in the amount of $11,000.00 for each Plaintiff, totaling $27,100.00   The fees and costs were only agreed to after resolving the amount of the underlying claims to the Plaintiffs, and represent a significant negative multiplier.

### III.    Release

To resolve these claims and in exchange for the settlement payments, Plaintiffs will provide a state and federal law wage and hour release to Defendant. Settlement Agreements at ¶ 3.

## ARGUMENT

### I.    Court Approval of FLSA Settlements

Many courts hold that in order for an employee to release FLSA claims, the Department of Labor or a court must approve the settlement and release. *Michaud v. Monro Muffler Brake, Inc.*, No. 12-cv-00353, 2015 U.S. Dist. LEXIS 32526, at *25 (D. Me. Mar. 17, 2015). When presented with a motion to approve a FLSA settlement:

> The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a "fair and reasonable resolution of a bona

---

[1] The parties also reached a settlement as to the other former participants in this action but are not seeking approval of those settlements in this forum, given that this Court has already dismissed their claims.

4

fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. Further, "[w]here a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Mireku v. Red Vision Sys., Inc.*, No. 11 Civ 9671(RA)(JLC), 2013 U.S. Dist. LEXIS 172102, 2013 WL 6335978, at *1 (S.D.N.Y. Dec. 6, 2013) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012); see also 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Silva v. Miller*, 307 Fed. Appx. 349 (11th Cir. 2009) (holding that the FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement").

*Phanngam v. Sivalai 888 Corp.*, Case No. 24-11221-JCB, 2025 U.S. Dist. LEXIS 56113 at *3 (D. Mass. Mar. 26, 2025) citing *Singleton v. AT&T Mobility Servs., LLC* 146 F. Supp. 3d 258 (D. Mass Nov. 2015).

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977); *see United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted). When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *Bennett v. D.L.S. Mktg., LLC*, No. 08 Civ. 611, 2009 U.S. Dist. LEXIS 38718, at *2 (M.D. Fla. May 7, 2009) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

## A.  The Settlement Is Fair and Reasonable and Should Be Approved

While the First Circuit has not articulated a precise standard for assessing the fairness of a class or collective settlement, *see In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71-72 (D. Mass.

2005) (internal quotations omitted), courts in this Circuit have approved FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes, *see Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219, 2017 U.S. Dist. LEXIS 195147 (D. Mass. Nov. 28, 2017); *Krokos v. Fresh Mkt., Inc.*, No. 16-cv-12082, 2018 U.S. Dist. LEXIS 204230 (D. Mass. Mar. 21, 2018).

### 1. **Bona Fide Dispute Exists**.

Here, there can be no doubt that there is a bona fide dispute about whether GMs are eligible for overtime pay under the FLSA. *Michaud v. Monro Muffler Brake, Inc.*, No. 12-cv-00353, 2015 U.S. Dist. LEXIS 32526, at \*25 (D. Me. Mar. 17, 2015). After full merits discovery and fully briefing and obtaining rulings on various summary judgment motions, class certification and decertification motions, the parties were able to obtain sufficient information to assess the strengths and weaknesses of their claims and defenses. Plaintiffs maintained that discovery showed that their primary duties were customer service tasks, and that any discretion they possessed was constrained by Defendant's strict corporate policies, and close oversight of their DMs. In Defendant's view, the evidence demonstrated that GMs, including Plaintiffs Clark and Coulter, gave input into the hiring, termination and discipline of employees who worked in their stores. Additionally, they were the highest-ranking employees in their stores who made decisions about the day-to-day operations of the store. Also, although GMs could not decide what products were sold in their stores, they could make suggestions about product offerings that were given weight, and they possessed the authority to find ways to drive sales in their business.

The motion practice following discovery further highlighted the existence of a bona fide dispute between the parties. Although Defendant sought summary judgment on the merits of Plaintiff Clark's claim (as well as the claims of Opt In Plaintiffs Armando Cardona and Jacob

Galba-Bright), and Plaintiffs filed summary judgment motions relating to certain defenses, the Court determined that a trial was necessary to resolve the parties' competing factual contentions regarding (among other things) GMs' primary duties, whether Defendant had a good faith basis for classifying GMs as exempt, and whether damages, if any, should be calculated on a half time versus time and a half basis.  (ECF No. 241).   Ultimately, after assessing the risk and expense of proceeding, the parties determined that settlement was ultimately best. While Plaintiffs believe they have strong claims, there are no guarantees at trial before a jury and Plaintiffs would face significant obstacles and risk the potential of an unsuccessful outcome if this case had proceeded to trial.  This settlement eliminates all of the uncertainties and risk associated with trials and potential appeals, and provides a fair and reasonable resolution to the disputed claims.

**2.    The Settlement Payment Fairly Compromises Clark's and Coulter's Claims**.

Plaintiff Clark was employed as a GM from approximately from October 2020 to July 2021, and was paid an annual salary of $64,000.00.  Assuming she worked 5 hours of overtime each week in 80% of the work weeks at issue, her overtime damages would amount to $3,938.00 when calculated on a half time basis. Plaintiff Coulter was employed as GM from March 2021 to November 2021, and was paid an annual salary of $62,000.00. Assuming he worked 5 hours of overtime each week in 80% of the work weeks at issue, his damages would amount to $3,815.00 when calculated on a half time basis.  In the settlement agreement, Plaintiffs compromised and agreed to recover approximately two thirds of the damages available to them within the two-year statute of limitations, including liquidated damages.[2]

---

[2] Neither Plaintiff was employed within the three-year statute of limitations. Moreover, in its ruling on Defendant's Motion for Summary Judgment as to Opt In Plaintiff Jamshid Firouzi, the Court concluded that "no reasonable factfinder could conclude that MyEyeDr acted willfully such that the statute of limitations period would be extended to three years." (ECF No. 241 at p. 63).

The settlement negotiated by the parties bears all the indicia of fairness warranting approval as set forth in *Lynn's Food Stores* because Plaintiffs were represented by experienced counsel, who, in the adversarial context of a lawsuit engaged in "serious, informed, non-collusive (arm's length") negotiations" of "a bona fide dispute between the parties with respect to coverage [and] amount due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015); *Lynn's Food Stores*, 679 F.2d at 1353-54, n.8. Plaintiffs' Counsel considers the settlement to substantially benefit the Plaintiffs, especially when weighed against the uncertain outcome at trial, risk of continued litigation, and the expense and delay which would result from prosecuting this action through completion. The settlement terms represent a successful resolution, given the fact that the jury might have concluded that Plaintiffs are exempt or entitled to substantially less damages than agreed to in the settlement. When balancing all of these risks against the settlement amount, it is the position of Plaintiffs that the amount fairly takes into account the risks and provides a fair amount to settle their disputed claims.

### B. The Court Should Approve Plaintiffs' Requests for a Significantly Discounted Attorneys' Fees and Cost Award.

The FLSA mandates the payment of attorneys' fees and costs for prevailing plaintiffs. 29 U.S.C. § 216(b). Recovery of money by settlement renders Plaintiffs' prevailing plaintiffs entitled to recovery of their attorneys' fees and costs. Consistent with the parties' settlement agreement, Plaintiffs seek approval for $22,000.00 in attorneys' fees and costs. Plaintiffs' Counsel's total lodestar for their work in this matter is well in excess of the amount they seek in light of 3 years of litigation. Plaintiffs' counsel's expenses alone exceed the $22,000 recovered in expenses. The

---

Therefore, there would be no basis for damages within the third year even if such weeks were available.

court transcripts incurred associated with the 30 plus depositions alone exceeds $45,000.00. Nonetheless, to settle this matter for these Plaintiffs, *after* reaching a reasonable and fair settlement for the Plaintiffs' underlying claims, Plaintiffs' Counsel separately negotiated and substantially reduced their fees and costs.

     **1. Plaintiffs' Fees and Costs Were Separately Negotiated After the Amount for the Plaintiffs Was Settled.**

Some courts have determined that when attorneys' fees and costs are separately settled in an FLSA case after a resolution is reached for the plaintiffs' underlying claims, there is no need to consider the reasonableness of the attorneys' fees and costs requested. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (finding "that [when] the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel"). Indeed, in *Barbee v. Big River Steel, LLC*, the Eighth Circuit held that there is no requirement under the FLSA for judicial approval of separately settled attorney fees.  927 F.3d 1024, 1027 (8th Cir. 2019).  Here, the fact that Plaintiffs' attorneys' fees and costs were separately negotiated only after a settlement of the underlying claims was obtained through the assistance of experienced mediator supports the reasonableness of the fees and costs requested and demonstrates that the fee agreed to by Defendant in this case did not affect the recovery of the Plaintiffs.  *See* Jones Decl., 21.

## CONCLUSION

Plaintiffs present this settlement to the Court for approval.  After multiple years of intense litigation, this settlement was achieved on behalf of Plaintiffs Clark and Coulter who are the only

Plaintiffs remaining in this case.  This settlement is a fair resolution of these claims and provides

significant monetary relief to the Plaintiffs and closure for Defendant.  Plaintiffs respectfully

request that the Court approve this settlement.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1, before filing the instant Motion, Plaintiffs' Counsel conferred

with Defense Counsel *via* electronic mail to determine Defendant's position on the relief sought

in this Motion.  Defense Counsel represented there was no opposition to the motion.

Respectfully submitted,

MARY ALICE CLARK, CHRISTOPHER
COULTER, AARON PEREZ and KEVIN
NELSON, on behalf of themselves, and on behalf of
all others similarly situated,

By their attorneys:

s/ Camar R. Jones
Sam J. Smith*
Loren Bolno Donnell*
**BURR & SMITH LLP**
9800 4th Street North, Suite 200
St. Petersburg, FL 33702
(813) 253-2010
ssmith@burrandsmithlaw.com
ldonnell@burrandsmithlaw.com

Gregg I. Shavitz
**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
Camar Jones*
Alan L. Quiles*
622 Banyan Trail, Suite 200
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com
cjones@shavitzlaw.com
aquiles@shavitzlaw.com

Hillary Schwab

**FAIR WORK, PC.**
192 South Street, Suite 450
Boston, MA 02111
Phone: (617)607-3261
hillary@fairworklaw.com

***Attorneys for Plaintiffs***
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 13, 2025, this document was filed via CM/ECF, and will be delivered electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

s/ Camar R. Jones
Camar R. Jones

# Composite Exhibit 1

## FLSA SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by Plaintiff Mary Alice Clark (hereinafter "Plaintiff") and Defendant Capital Vision Services, LLC d/b/a MyEyeDr.("Defendant"), collectively referred to as "the Parties."

## RECITALS

WHEREAS, Plaintiff filed a lawsuit in the United States District Court for the District of Massachusetts (the "Lawsuit") titled *Clark v. Capital Vision Services, LLC d/b/a MyEyeDr*, Case No. 1:22-cv-10236-DJC, in which Plaintiff asserted that Defendant failed to pay her and other General Managers overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and Massachusetts state law;

WHEREAS, Defendant denies all material allegations and claims asserted in the Lawsuit; and

WHEREAS, the Parties wish to avoid the burden, expense, and uncertainty of litigating their claims and desire, without any concessions or admission of unlawful conduct, liability, fault, or wrongdoing of any Party, to effect a full, complete, final, and binding settlement and compromise of all claims released by this Agreement;

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and promises set forth in this Agreement, agree as follows:

## AGREEMENT

1. **Unopposed Motion for Settlement Approval & Dismissal.** The settlement is contingent upon the Court approving the settlement of Plaintiff's claims and dismissing the Lawsuit with prejudice. The Parties agree to cooperate and take all steps necessary and appropriate to dismiss the Lawsuit. Plaintiff shall file an unopposed motion for approval of FLSA settlement with the Court. The motion shall ask the Court to decide the motion on briefing without hearing, unless the Court otherwise orders. Such motion shall request that the Lawsuit be dismissed with prejudice immediately upon approval, with the Court retaining jurisdiction over the settlement. The motion shall be subject to Defendant's counsel's review and approval prior to filing, which shall not be withheld unreasonably, and the draft shall be provided to Defendant's counsel no later than 3 business days prior to any filing deadline set by the Court. If the Court does not grant approval of the settlement, the Parties will work together in good faith to address and resolve any concerns raised by the Court and attempt to obtain approval on terms consistent with the provisions of this Agreement. If, after such efforts to obtain Court approval, such approval is not granted, this Agreement shall be void and of no effect.

2. **Consideration.** In exchange for the promises made by and in consideration for all the terms agreed to by Plaintiff in this Agreement, Defendant agrees to make the following separate payments totaling $13,550.00 (Thirteen Thousand Five Hundred Fifty and No/100 Dollars):

1

To Ms. Clark:

- $1,275.00, minus applicable deductions and withholdings, for lost wages by check or wire transfer payable to Plaintiff Clark. Defendant's receipt of an IRS Form W-4 completed and executed by Ms. Clark is a condition precedent to this payment. Defendant will issue an IRS Form W-2 to Ms. Clark reflecting this payment.

- $1,275.00, to Ms. Clark for non-wage compensatory or liquidated damages. Defendant's receipt of an IRS Form W-9 completed and executed by Ms. Clark is a condition precedent to this payment. Defendant will issue an IRS Form 1099 to Ms. Clark reflecting this payment.

To Shavitz Law Group:

- $11,000.00, for attorney fees and costs, by check or wire transfer payable to Shavitz Law Group, P.A. Defendant's receipt of an IRS Form W-9 completed and executed by that firm is a condition precedent to this payment. Defendant will issue an IRS Form 1099 to each Plaintiff for a portion of the attorneys' fees payment that is proportional to the distribution to that Plaintiff.

Defendant will report the payment(s) above to the IRS and state taxing authorities as required by law. Plaintiff acknowledges that Plaintiff has not relied on any statements or representations by Defendant or its attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Plaintiff acknowledges and assumes all responsibility for paying those amounts and further agree to indemnify and hold Defendant harmless for payment of any additional taxes and any interest and penalties thereon.

All parties warrant that they are not aware of any attorneys' liens placed on this matter that are not otherwise resolved by this Agreement.

Payment will be mailed or electronically transmitted to Plaintiff's counsel within 21 business days after the latest of 1) the Court's approval of the settlement and 2) provision of all required tax forms.

**3.    Wage and Hour Release.** Plaintiff releases Defendant (plus its parents, subsidiaries, affiliates, insurers, employees, directors, and officers, along with their predecessors, successors and all such entities' past and present directors, officers, employees and anyone else acting for any of them – all together "Releasees") from all actions, claims, demands or causes of action, whether known or unknown, contingent or absolute, arising at any time through the Court's approval of this Agreement, relating to: (i) the facts, events, allegations, and contentions in the Complaint; (ii) Defendant's pay practices and compliance with federal, state, or local wage and hour laws, statutes, or regulations, including without limitation any claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., or any other statutory or common law claims under federal, state, municipal or local law, regulation, or wage ordinance for unpaid wages,

2

unpaid overtime wages, off-the-clock work, meal and rest breaks, deductions from pay, or any other pay practices, including the Massachusetts Payment of Wages Law, G.L. c. 149, ss. 148 & 150; and, (iii) all related derivative benefits claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) arising under any and all applicable state or federal laws, statutes, or regulations. Plaintiff's release includes any interest on such claims, liquidated damages, penalties, attorney's fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever, including claims for retaliation. This release of claims by Plaintiff shall preclude claims asserted in court, arbitration, or any other forum or venue, and claims asserted on an individual, mass action, representative, or class action basis.

4.  **Covenant Not to Sue.** Besides waiving and releasing claims as set forth in Section 3 above, Plaintiff further agrees never to sue any of the Releasees in any court or other forum for any released claim arising prior to the Court's approval of this Agreement. To the extent that Plaintiff violates this covenant by asserting any claim released by Section 3 against any Releasee, such Plaintiff shall be responsible for all reasonable costs such Releasee incurs in responding to such claim, including without limitation, such Releasee's attorneys' fees.

5.  **No Admission of Liability.** This Agreement is entered into in compromise of disputed claims. The Parties agree and acknowledge that the execution of this Agreement and the payment of the monetary consideration described herein are not and shall not be construed in any way as an admission of wrongdoing, misclassification or liability on the part of Defendant. Plaintiff further acknowledges that Defendant denies that it engaged in any illegal or improper conduct and this Agreement shall have no evidentiary effect in any subsequent litigation, claims or matters of any type.

6.  **Voluntary Agreement.** Plaintiff agrees that Plaintiff is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; that the Agreement is fair and reasonable; that Plaintiff has had an opportunity to and did consult with counsel of their choosing prior to signing this Agreement; that Plaintiff has been given a reasonable amount of time to consider this Agreement; and that, absent this Agreement, Plaintiff would not otherwise be entitled to the consideration specified in this Agreement.

7.  **Confidentiality.** Plaintiff agrees to keep all information pertaining to this Agreement confidential, other than the information that is or will be included in public docket entries filed with the Court or as otherwise required by the Court. Plaintiff may also discuss it with their spouse, attorneys, and financial or tax advisor. Plaintiff and Plaintiff's counsel shall not post or otherwise publicize any allegations in the Lawsuit, the settlement amounts outlined in this Agreement, or other terms and conditions of the settlement, including the discussions, conversations, and negotiations leading to the execution of this Agreement, on any blogs, websites, or social media sites or in the media—including, but not limited to, Twitter/X, Facebook, MySpace, Instagram, Topix, TikTok and LinkedIn.

8.  **No Known Claimants.** Plaintiff and their law firms represent that they are unaware of any person not already identified to Defendant who, through Shavitz Law Group, Fair Work, PC, or Burr & Smith LLP, have made or intend to make claims against Defendant or

3

any Releasee (as defined in the agreement). Plaintiff's attorneys and their law firms further represent that they have not been retained by any person to review, investigate, opine on, or consider asserting any claim against Defendant or any Releasee.

**9.**    **General Manager Exempt Status.** Plaintiff agrees that the General Manager job duties set forth in the job description attached as Exhibit 2 to the Parties' Term Sheet dated 7/1/2025 appear to be consistent with an exempt classification, and many of the duties that Plaintiff alleged to be non-exempt occurred due to circumstances that arose during the COVID-19 pandemic, including staffing shortages and other unique issues. Defendant intends to continue classifying its General Managers as exempt, based on the important managerial tasks performed by those managers and the substantial evidence supporting such an exemption in the discovery and case record.

**10.**    **No Rehire.** Plaintiff agrees not to seek or accept employment in the future with Defendant or any Releasee. Plaintiff further acknowledges that, to the extent that they do seek or obtain employment with Defendant or any Releasee in the future, Defendant or such Releasee shall be entitled to discharge them based solely on their violation of this provision of the Parties' Agreement and that such termination shall not be a basis for any legal claim of any kind against Defendant or such Releasee.

**11.**    **Miscellaneous.**

    **a.**    **Entire Agreement.** This Agreement is the complete understanding between the Parties and replaces any other agreements, representations or promises, written or oral.

    **b.**    **No Waiver by Inaction.** The failure of any Party to insist upon strict adherence to any term of this Agreement shall not be considered a waiver as to that term or any other term in the Agreement.

    **c.**    **Continuing Jurisdiction.** Nothing in this Agreement is intended to limit the Court's authority to retain continuing jurisdiction over the Parties to administer and enforce the terms of this Agreement. The Parties agree the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the terms of this Agreement and all orders and judgments entered in connection with it.

    **d.**    **Construction.** The Parties have had an opportunity to negotiate all terms, all conditions, and the language of this Agreement and hereby agree that all the terms and conditions shall be construed as if drafted by all Parties and not against any as the drafter. Accordingly, any rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the written instrument shall not apply to the construction of this Agreement.

    **e.**    **Choice of Law.** The enforcement of this Agreement shall be governed and interpreted by, and under, the laws of Massachusetts, regardless of whether any party is, or may

hereafter be, a resident of another state and without regard to Massachusetts' conflict of law rules.

      **f.    Extension of Time.** The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Agreement.

      **g.    Signatures/Counterparts.** This Agreement may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all the Parties to all the counterparts had signed the same instrument. This Agreement may be executed by "wet" signature (i.e., using pen and paper) or electronic signature (e.g., via DocuSign), and may be delivered by electronic means. E-mailed or faxed copies of original signatures shall be considered the equivalent of an original signature.

      **h.    Modifications.** With the exception of extensions of time as described in this Section, no amendment or modification of the terms of this Agreement shall be binding on the Parties unless reduced to writing and signed by the person or entity against whom enforcement is sought.

      **i.    Severability.** The Parties agree that if any phrase, clause, or provision of this Agreement, except the payments to Plaintiff contemplated by Section 2 and the release contemplated in Section 3, is declared illegal, invalid, or unenforceable by a court of competent jurisdiction after this Agreement takes effect, such phrase, clause, or provision shall be deemed severed from this Agreement, but will not affect any other provisions of this Agreement, which shall otherwise remain in full force and effect. If any phrase, clause, or provision of this Agreement, except the payments to Plaintiff contemplated by Section 2 and the release contemplated in Section 3, is deemed unreasonable, onerous, or unduly restrictive by a court of competent jurisdiction after this Agreement takes effect, it shall not be stricken in its entirety and held totally void and unenforceable but shall remain effective to the maximum extent permissible within reasonable bounds.

### [SIGNATURE PAGES FOLLOW]

Through the signatures below, all of the terms and conditions of the attached Agreement are acknowledged, accepted, and agreed to by:

CAPITAL VISION SERVICES, LLC d/b/a MYEYEDR.

_Kevin McCoy_
_____

Its:  Senior Employment Counsel/Operations

Date:  8/13/2025
_____

MARY ALICE CLARK

_Mary Alice Clark_
_____

Dated:  08/11/2025
_____

6

## FLSA SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by Plaintiff Christopher Coulter (hereinafter "Plaintiff") and Defendant Capital Vision Services, LLC d/b/a MyEyeDr. ("Defendant"), collectively referred to as "the Parties."

## RECITALS

WHEREAS, Plaintiff joined a lawsuit in the United States District Court for the District of Massachusetts (the "Lawsuit") titled *Clark v. Capital Vision Services, LLC d/b/a MyEyeDr*, Case No. 1:22-cv-10236-DJC, in which Plaintiff asserted that Defendant failed to pay Plaintiff and other General Managers overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and Massachusetts state law;

WHEREAS, Defendant denies all material allegations and claims asserted in the Lawsuit; and

WHEREAS, the Parties wish to avoid the burden, expense, and uncertainty of litigating their claims and desire, without any concessions or admission of unlawful conduct, liability, fault, or wrongdoing of any Party, to effect a full, complete, final, and binding settlement and compromise of all claims released by this Agreement;

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and promises set forth in this Agreement, agree as follows:

## AGREEMENT

1.    **Unopposed Motion for Settlement Approval & Dismissal.** The settlement is contingent upon the Court approving the settlement of Plaintiff's claims and dismissing the Lawsuit with prejudice. The Parties agree to cooperate and take all steps necessary and appropriate to dismiss the Lawsuit. Plaintiff shall file an unopposed motion for approval of FLSA settlement with the Court. The motion shall ask the Court to decide the motion on briefing without hearing, unless the Court otherwise orders. Such motion shall request that the Lawsuit be dismissed with prejudice immediately upon approval, with the Court retaining jurisdiction over the settlement. The motion shall be subject to Defendant's counsel's review and approval prior to filing, which shall not be withheld unreasonably, and the draft shall be provided to Defendant's counsel no later than 3 business days prior to any filing deadline set by the Court. If the Court does not grant approval of the settlement, the Parties will work together in good faith to address and resolve any concerns raised by the Court and attempt to obtain approval on terms consistent with the provisions of this Agreement. If, after such efforts to obtain Court approval, such approval is not granted, this Agreement shall be void and of no effect.

2.    **Consideration.** In exchange for the promises made by and in consideration for all the terms agreed to by Plaintiff in this Agreement, Defendant agrees to make the following separate payments totaling $13,550.00 (Thirteen Thousand Five Hundred Fifty and No/100 Dollars):

To Mr. Coulter:

- $1,275.00, minus applicable deductions and withholdings, for lost wages by check or wire transfer payable to Plaintiff Coulter. Defendant's receipt of an IRS Form W-4 completed and executed by Plaintiff is a condition precedent to this payment. Defendant will issue an IRS Form W-2 to Plaintiff reflecting this payment.

- $1,275.00, to Mr. Coulter for non-wage compensatory or liquidated damages. Defendant's receipt of an IRS Form W-9 completed and executed by Plaintiff is a condition precedent to this payment. Defendant will issue an IRS Form 1099 to Plaintiff reflecting this payment.

To Shavitz Law Group:

- $11,000.00, for attorney fees and costs, by check or wire transfer payable to Shavitz Law Group, P.A. Defendant's receipt of an IRS Form W-9 completed and executed by that firm is a condition precedent to this payment. Defendant will issue an IRS Form 1099 to each Plaintiff for a portion of the attorneys' fees payment that is proportional to the distribution to that Plaintiff.

Defendant will report the payment(s) above to the IRS and state taxing authorities as required by law. Plaintiff acknowledges that Plaintiff has not relied on any statements or representations by Defendant or its attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Plaintiff acknowledges and assumes all responsibility for paying those amounts and further agree to indemnify and hold Defendant harmless for payment of any additional taxes and any interest and penalties thereon.

All parties warrant that they are not aware of any attorneys' liens placed on this matter that are not otherwise resolved by this Agreement.

Payment will be mailed or electronically transmitted to Plaintiff's counsel within 21 business days after the latest of 1) the Court's approval of the settlement and 2) provision of all required tax forms.

3. **Wage and Hour Release.** Plaintiff releases Defendant (plus its parents, subsidiaries, affiliates, insurers, employees, directors, and officers, along with their predecessors, successors and all such entities' past and present directors, officers, employees and anyone else acting for any of them – all together "Releasees") from all actions, claims, demands or causes of action, whether known or unknown, contingent or absolute, arising at any time through the Court's approval of this Agreement, relating to: (i) the facts, events, allegations, and contentions in the Complaint; (ii) Defendant's pay practices and compliance with federal, state, or local wage and hour laws, statutes, or regulations, including without limitation any claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., or any other statutory or common law claims under federal, state, municipal or local law, regulation, or wage ordinance for unpaid wages,

2

unpaid overtime wages, off-the-clock work, meal and rest breaks, deductions from pay, or any other pay practices, including the Massachusetts Payment of Wages Law, G.L. c. 149, ss. 148 & 150; and, (iii) all related derivative benefits claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) arising under any and all applicable state or federal laws, statutes, or regulations. Plaintiff's release includes any interest on such claims, liquidated damages, penalties, attorney's fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever, including claims for retaliation. This release of claims by Plaintiff shall preclude claims asserted in court, arbitration, or any other forum or venue, and claims asserted on an individual, mass action, representative, or class action basis.

4.     **Covenant Not to Sue.** Besides waiving and releasing claims as set forth in Section 3 above, Plaintiff further agrees never to sue any of the Releasees in any court or other forum for any released claim arising prior to the Court's approval of this Agreement. To the extent that Plaintiff violates this covenant by asserting any claim released by Section 3 against any Releasee, such Plaintiff shall be responsible for all reasonable costs such Releasee incurs in responding to such claim, including without limitation, such Releasee's attorneys' fees.

5.     **No Admission of Liability.** This Agreement is entered into in compromise of disputed claims. The Parties agree and acknowledge that the execution of this Agreement and the payment of the monetary consideration described herein are not and shall not be construed in any way as an admission of wrongdoing, misclassification or liability on the part of Defendant. Plaintiff further acknowledges that Defendant denies that it engaged in any illegal or improper conduct and this Agreement shall have no evidentiary effect in any subsequent litigation, claims or matters of any type.

6.     **Voluntary Agreement.** Plaintiff agrees that Plaintiff is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; that the Agreement is fair and reasonable; that Plaintiff has had an opportunity to and did consult with counsel of their choosing prior to signing this Agreement; that Plaintiff has been given a reasonable amount of time to consider this Agreement; and that, absent this Agreement, Plaintiff would not otherwise be entitled to the consideration specified in this Agreement.

7.     **Confidentiality.** Plaintiff agrees to keep all information pertaining to this Agreement confidential, other than the information that is or will be included in public docket entries filed with the Court or as otherwise required by the Court. Plaintiff may also discuss it with their spouse, attorneys, and financial or tax advisor. Plaintiff and Plaintiff's counsel shall not post or otherwise publicize any allegations in the Lawsuit, the settlement amounts outlined in this Agreement, or other terms and conditions of the settlement, including the discussions, conversations, and negotiations leading to the execution of this Agreement, on any blogs, websites, or social media sites or in the media—including, but not limited to, Twitter/X, Facebook, MySpace, Instagram, Topix, TikTok and LinkedIn.

8.     **No Known Claimants.** Plaintiff and their law firms represent that they are unaware of any person not already identified to Defendant who, through Shavitz Law Group, Fair Work, PC, or Burr & Smith LLP, have made or intend to make claims against Defendant or

any Releasee (as defined in the agreement). Plaintiff's attorneys and their law firms further represent that they have not been retained by any person to review, investigate, opine on, or consider asserting any claim against Defendant or any Releasee.

9. **General Manager Exempt Status.** Plaintiff agrees that the General Manager job duties set forth in the job description attached as Exhibit 2 to the Parties' Term Sheet dated 7/1/2025 appear to be consistent with an exempt classification, and many of the duties that Plaintiff alleged to be non-exempt occurred due to circumstances that arose during the COVID-19 pandemic, including staffing shortages and other unique issues. Defendant intends to continue classifying its General Managers as exempt, based on the important managerial tasks performed by those managers and the substantial evidence supporting such an exemption in the discovery and case record.

10. **No Rehire.** Plaintiff agrees not to seek or accept employment in the future with Defendant or any Releasee. Plaintiff further acknowledges that, to the extent that they do seek or obtain employment with Defendant or any Releasee in the future, Defendant or such Releasee shall be entitled to discharge them based solely on their violation of this provision of the Parties' Agreement and that such termination shall not be a basis for any legal claim of any kind against Defendant or such Releasee.

11. **Miscellaneous.**

a. **Entire Agreement.** This Agreement is the complete understanding between the Parties and replaces any other agreements, representations or promises, written or oral.

b. **No Waiver by Inaction.** The failure of any Party to insist upon strict adherence to any term of this Agreement shall not be considered a waiver as to that term or any other term in the Agreement.

c. **Continuing Jurisdiction.** Nothing in this Agreement is intended to limit the Court's authority to retain continuing jurisdiction over the Parties to administer and enforce the terms of this Agreement. The Parties agree the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the terms of this Agreement and all orders and judgments entered in connection with it.

d. **Construction.** The Parties have had an opportunity to negotiate all terms, all conditions, and the language of this Agreement and hereby agree that all the terms and conditions shall be construed as if drafted by all Parties and not against any as the drafter. Accordingly, any rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the written instrument shall not apply to the construction of this Agreement.

e. **Choice of Law.** The enforcement of this Agreement shall be governed and interpreted by, and under, the laws of Massachusetts, regardless of whether any party is, or may

4

hereafter be, a resident of another state and without regard to Massachusetts' conflict of law rules.

    **f.**  **Extension of Time.** The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Agreement.

    **g.**  **Signatures/Counterparts.** This Agreement may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all the Parties to all the counterparts had signed the same instrument. This Agreement may be executed by "wet" signature (i.e., using pen and paper) or electronic signature (e.g., via DocuSign), and may be delivered by electronic means. E-mailed or faxed copies of original signatures shall be considered the equivalent of an original signature.

    **h.**  **Modifications.** With the exception of extensions of time as described in this Section, no amendment or modification of the terms of this Agreement shall be binding on the Parties unless reduced to writing and signed by the person or entity against whom enforcement is sought.

    **i.**  **Severability.** The Parties agree that if any phrase, clause, or provision of this Agreement, except the payments to Plaintiff contemplated by Section 2 and the release contemplated in Section 3, is declared illegal, invalid, or unenforceable by a court of competent jurisdiction after this Agreement takes effect, such phrase, clause, or provision shall be deemed severed from this Agreement, but will not affect any other provisions of this Agreement, which shall otherwise remain in full force and effect. If any phrase, clause, or provision of this Agreement, except the payments to Plaintiff contemplated by Section 2 and the release contemplated in Section 3, is deemed unreasonable, onerous, or unduly restrictive by a court of competent jurisdiction after this Agreement takes effect, it shall not be stricken in its entirety and held totally void and unenforceable but shall remain effective to the maximum extent permissible within reasonable bounds.

**[SIGNATURE PAGES FOLLOW]**

Through the signatures below, all of the terms and conditions of the attached Agreement are acknowledged, accepted, and agreed to by:

CAPITAL VISION SERVICES, LLC d/b/a MYEYEDR.

_Kevin McCoy_

Its: Senior Employment Counsel/Operations

Date: 8/13/2025

CHRISTOPHER COULTER

_Christopher Coulter_

Dated: 08/08/2025

6